ARTHUR V. ISRAEL.

| 15 | 147 |
| 18 | 159 |
| 15 | 147 |
| 19 | 212 |
| 3a | 48 |
| 15 | 147 |
| 22 | 119 |
| 15 | 147 |
| 26 | 336 |

1. JURISDICTION — WHEN JUDGMENT OR DECREE VOID.— Where the record shows affirmatively on its face that there was no jurisdiction over defendant's person, the judgment or decree entered is void.

2. TAKING ADVANTAGE OF A VOID DECREE MAY PRECLUDE RIGHT TO REPUDIATE IT.— Public policy requires that, so far as may be consistent with fundamental principles of law, one who has attempted to profit by a supposed divorce, and has exercised the resulting privilege of remarriage, shall not, for the mere purpose of obtaining property, be permitted to repudiate his election.

3. ADVANTAGE TAKEN BY A WIFE OF A VOID DECREE OF DIVORCE MAY, ON DEATH OF HUSBAND, DEFEAT HER RIGHTS AS HIS WIDOW. When, therefore, the wife, without cause, deserts her husband and home, and for years lives in adultery with another man, and afterwards, upon learning that a divorce has been obtained by her deserted husband, causes a marriage ceremony with her paramour to be solemnized, and continuously lives and cohabits with him as his wife, she may not, upon the subsequent decease of her abandoned husband, take advantage of the fact that the divorce decree is void for want of proper service of process, and successfully assert against other heirs her right under the statute of descents and distribution to deceased's estate as his widow.

4. RULE NOT CHANGED BY PREVIOUS ADJUDICATION OF INVALIDITY OF DECREE.— Nor is the foregoing rule of law changed by the fact that at a former stage of the proceeding, when the acts above mentioned as constituting an equitable estoppel were not pleaded or brought to the court's attention, the invalidity of the decree was judicially adjudged.

*Error to Larimer County Court.*

THE case at bar was once before considered upon writ of error by the supreme court. *Israel v. Arthur,* 7 Colo. 5. It was then reviewed, and reversed, upon a record presenting the following facts:

Defendant in error in May, 1881, filed her petition in the county court alleging that John Arthur died intestate and without children; that petitioner was his widow; that plaintiff in error, as administrator, being in possession of the property, was speculating with the funds in his own business, and failing to account for interest, profits, etc.; that certain other parties, as brothers, sisters, and descendants of a deceased sister, claimed to be entitled to the estate as heirs at law; that petitioner was, on the contrary, sole heir and distributee, under the statute, of said estate. She demanded that her rights in the premises be recognized, and the administrator be required to render his accounts accordingly. An answer was duly filed by the defendants named, in which petitioner's relationship and right to inherit, as the widow of Arthur, deceased, and the misappropriation of the estate, were denied. As a separate defense, defendants, admitting the intermarriage of petitioner with Arthur, alleged that on February 9, 1875, a decree of divorce was entered by the probate court of Larimer county, in favor of the said Arthur and against petitioner. And, for a further defense, defendants alleged that on June 12, 1877, a second decree of divorce was duly made and entered in said court in favor of said Arthur, and against complainant. Replication was filed denying the new matter in the answer. The proofs upon the trial were confined to the issues thus made. The two decrees of divorce mentioned in the answer were offered and received in evidence over petitioner's objection. A judgment was duly rendered in favor of the defendants.

Upon reversal by the supreme court of the case thus presented, and by leave of the county court to which it had

been remanded, petitioner filed an amendment or supplement to her original petition, in which the facts of such proceeding on error and reversal, together with the conclusion reached by the reviewing tribunal in the premises, were duly set forth.    Afterwards, plaintiff in error, also by leave of court, filed a supplemental answer to the original and supplemental petitions.    In this supplemental answer it was averred, among other things, that after the divorce decrees were entered, the said petitioner, with full knowledge thereof, and under and in pursuance thereof, and in the life-time of the said Arthur, " entered voluntarily into a contract of marriage with one James H. Israel, and caused and procured the said contract of marriage to be duly and legally solemnized, and, thereunder, took upon herself and assumed the relations of wife to the said James H. Israel, and thenceforward, and at all times thereafter, continuously, by virtue of the said solemnization of said marriage contract, lived and cohabited with the said James H. Israel, as his wife, until, and ever since, the death of the said John Arthur."    That prior to the reversal of said cause, although plaintiff in error had continuously, from the commencement of the suit, made diligent and persistent efforts to ascertain the exact relationship existing between petitioner and the said Israel, he had been wholly unable to discover the foregoing facts, and for this reason alone did not plead them in bar at an earlier period.    That he would sooner have ascertained these facts but for the following reasons, viz. :    That, in October, 1873, petitioner abandoned the said Arthur and eloped and fled to remote and unknown parts with the said Israel, and thereafter, and until the divorce decrees were entered, and the marriage contract was solemnized, lived and cohabited with said Israel in a state of adultery, representing herself as his wife.    That upon learning of the decrees of divorce, and procuring the solemnization of marriage, as aforesaid, both petitioner and Israel refrained from making the same public because of the desire to conceal and secrete " from their acquaintances

and neighbors the illicit and adulterous relations previously sustained towards each other, and to prevent the scandal and disgrace which must necessarily have arisen from a public marriage, or from a marriage taking place at their usual place of abode," and in the usual way. And, finally, that it was only through confidential confessions of petitioner to certain friends, which were kept secret until after the determination of her writ of error, that plaintiff in error became aware of the facts connected with her said marriage to Israel.

To the matters contained in said supplemental answer petitioner demurred on the ground that they were not sufficient in law to constitute a defense. Upon the hearing, the court below sustained this demurrer; and, as leave to plead over was not requested, entered final judgment against plaintiff in error. To reverse this judgment the present proceeding was instituted.

Messrs. L. S. Dixon, E. A. Ballard, T. M. Robinson and Eph. Love, for plaintiff in error.

Messrs. Decker & Yonley and S. B. A. Haynes, for defendant in error.

Chief Justice Helm delivered the opinion of the court.

The present controversy has been once before submitted to this court for adjudication. There was then, however, nothing in the record to show that Mrs. Israel, after deserting Arthur, and prior to the divorce decrees, had been guilty of immoral conduct; neither was there anything, aside from these decrees, to indicate that she had not, up to the commencement of proceedings therefor, conducted herself as a good, true and affectionate wife; or that subsequent to the entry thereof, and with knowledge of the same, she had, during Arthur's life-time, remarried, and lived and cohabited with another man as his wife. The single question then presented, wholly unembarrassed by any of these con-

siderations, was whether or not the decrees, which were void because the records showed affirmatively that there was no jurisdiction over the person, should have been received in evidence and given the same force and effect as if valid and binding. The court held that they should not; and, for error in their admission, reversed the judgment.

The record now before us, on the contrary, discloses a voluntary acceptance by petitioner of the privileges resulting from the divorce decrees, as well as antecedent conduct on her part, that is highly reprehensible from both a legal and a moral standpoint. That petitioner's purpose was to secure the estate of deceased was known then as now; but the question as to whether she may accomplish this purpose obviously rests at the present time upon very different considerations from those formerly brought to our attention.

We cannot accept the assertion of counsel for defendant in error that the decision of the court upon the former case is decisive of the present review. We still adhere to the opinion that the decrees in question were void, and not merely voidable; but assuming such invalidity, and giving to the declaration of this court reciting that fact all the force and effect of a final adjudication thereof, we feel warranted in holding that petitioner's right to the estate of Arthur may still be inquired of.

It is to be hoped, for her sake, that the conduct of petitioner is not correctly set forth in the supplemental answer; but the averments of this pleading in that behalf are, by the demurrer, temporarily confessed, and for the purposes of the present decision must be treated as true.

The question, therefore, *now* presented for determination may be stated as follows: When the wife, without cause, deserts her husband and home, and for years lives in adultery with another man, and afterwards, upon learning that a divorce has been obtained by her deserted husband, causes a marriage ceremony with her paramour to be solemnized, and continuously lives and cohabits with him as his wife, may she, upon the subsequent decease of her abandoned

husband, take advantage of the fact that the divorce decree is void for want of proper service of process, and successfully assert against other heirs her right, under the statute of descents and distributions, to the deceased's estate as his widow? An affirmative answer to this question would be so shocking to good morals, to sound public policy and to the simplest principles of justice, that we shall decline to give it unless coerced into doing so by cogent and firmly established rules of law.

As a matter of law, petitioner must, under the circumstances, be presumed to have known before Arthur's death that the divorce decrees were invalid; and it is fair to assume that such in fact was the case, as, besides the grounds upon which the legal presumption rests, she, so promptly after that event asserted their invalidity. Had she properly challenged those decrees during the life-time of Arthur she would have incurred the hazard of a restoration of conjugal relationship, or of his procurement of a binding divorce. Either of these results was evidently objectionable to her, and both were carefully avoided. She voluntarily elected to postpone action until such time as she might secure all the benefits of the marriage contract without discharging any of its burdens. Abandoning for years the performance of every marital obligation and duty, she awaited until death had rendered such performance impossible, and then boldly hastened to seize all the pecuniary advantages conferred by law upon the faithful wife and bereaved widow. Under these circumstances, petitioner cannot complain if we insist upon treating the present controversy as one relating solely to property rights, unaffected by those legal considerations which give to marriage and the family their peculiar *status*, with accompanying special privileges and protection. *Zoellner v. Zoellner*, 46 Mich. 511.

But if the divorce decrees receive the same treatment as judgments, or decrees in ordinary controversies relating to damages or property, petitioner's action must fail; for one who accepts and retains the fruits of a void judgment can-

not afterwards repudiate his action and take advantage of its invalidity. *Water Co. v. Middaugh*, 12 Colo. 434, and cases cited; *Duff v. Wyncoop*, 74 Pa. St. 300.

The foregoing principle has numerous other salutary applications; as, for instance, that one, having accepted the benefits of an unconstitutional law, cannot, as a general rule, rely upon such unconstitutionality as a defense, even though the invalidity has been adjudicated in another suit. *Daniels v. Tearney*, 102 U. S. 415, and cases. Also, that a corporation, having exercised the privileges of its franchise, when sued for its negligent or malicious tort, shall not successfully invoke, as a defense, the plea of *ultra vires*. *Bank v. Graham*, 100 U. S. 699. And in many cases the same inhibition applies after the benefits of otherwise binding corporate contracts have been enjoyed. *Railway Co. v. McCarthy*, 96 U. S. 258.

We discover, upon principle, no sufficient reason why petitioner's conduct in the premises should not produce just as effective an estoppel as if she had received the proceeds of a void judgment for money. By her subsequent marriage with Israel during Arthur's life-time, she accepted, so far as was within her power, the benefits or privileges of the divorce decrees. The fact that she did not then know that those decrees were void is a matter of no more consequence than is the ignorance in this respect of one who, knowingly in all other particulars, receives the fruits of an ordinary void judgment at law. That, at the time of her marriage with Israel, she understood the decrees to be valid, is, if true, only an additional earnest of her acquiescence in the result, and sincerity in accepting and taking advantage of the benefits supposed to follow. Besides, had she believed them void, her obliquity would be even deeper than it is; because to her other alleged offenses would be added that of intentional fraud upon Israel, who may have thought that he was contracting a valid marriage.

We are not unmindful of the fact that the analogy between accepting the fruits of void judgments at law and

accepting the pecuniary benefits, if any there be, together
with the privileges of void divorce decrees, is not perfect
in all respects.   But the importance and justice of recog-
nizing an estoppel in the latter case may be far more
weighty than in the former.   The immediate parties are
not alone concerned.   The public is always, and other in-
dividuals are usually, profoundly interested.   Public policy,
as well as private interest, requires that, so far as may be
consistent with fundamental principles of law, one who has
attempted to profit by a supposed divorce, and has exer-
cised the resulting privilege of remarriage, shall not, for
the mere purpose of obtaining property, be permitted to
repudiate his election and thus demonstrate the invalidity
of his second marriage, together with the unconscious adul-
tery of his second wife, and the illegitimacy of her children,
if any she have by him.

Were petitioner attempting, in the light of the present
record, to have the divorce decrees held void, her attempt
would be futile.   And the fact that upon another and dif-
ferent record this court was induced to declare such nullity
is, as already suggested, not conclusive of her right to the
property in question.   It clearly appears from the admitted
averments of the supplemental answer that petitioner her-
self is responsible for the failure of defendant to sooner
plead in bar the facts which operate in the nature of an es-
toppel by conduct; and since, if these matters had been
known in the first instance, petitioner would not, for the
purpose of securing Arthur's estate, have been permitted to
show the invalidity of the divorce decrees, we unhesitat-
ingly conclude that she should not now be allowed to take
advantage of such invalidity, in order to accomplish the
same result.

The application of a doctrine analogous to that of equi-
table estoppels to cases which, in essential particulars,
strongly resemble the one at bar, is by no means a novelty.
*Ellis v. White,* 61 Iowa, 644; *Garner v. Garner,* 38 Ind. 139;
*Prater v. Prater,* 87 Tenn. 78; *Duke v. Reed,* 64 Tex. 705;

*Odiorne's Appeal*, 54 Pa. St. 175; *Bourne v. Simpson*, 9 B. Mon. 454; *Baily v. Baily*, 44 Pa. St. 274; *Richeson v. Simmons*, 47 Mo. 20; *Yorston v. Yorston*, 32 N. J. Eq. 495; *Sedlak v. Sedlak*, 14 Or. 540; *Nichols v. Nichols*, 25 N. J. Eq. 60.

In two or three of the foregoing cases the principle of estoppel was applied where wives had abandoned their husbands and formed adulterous relations with other men, or had simply renounced the marriage tie and forsaken the marital obligations, but where in fact no divorce proceedings were instituted. In at least two of the others the learned judges who prepared the opinions dwell upon *laches* as well as acquiescence. These decisions are, in the main, well considered, and we have no disposition to reject the particular reasons, so far as applicable, given in support thereof, but we prefer to rest our conclusion especially upon the specific grounds hereinbefore considered.

Petitioner's demurrer to the supplemental answer should have been overruled. The judgment of the court below is accordingly reversed, and the cause remanded for further proceedings.

*Reversed.*