WILLIAM F. MARVIN v. CLARENCE H. FOSTER and Others.[1]

May 23, 1895.

Nos. 9235—(49).

**Validity of Divorce—Estoppel.**

Where a married man left his wife and home in this state in 1873, and thereafter lived in the city of Washington, without supporting her, and never lived with her again, or returned to this state, and she obtained a judgment of divorce against him May 30, 1877, upon the grounds of desertion, but which judgment was void by reason of defective service of the summons, but of the pendency of which action he had actual notice, and declined to appear and defend, but afterwards, upon learning that a divorce had been granted, he married another woman, with whom he lived, and she had a child by him, *held* that, upon the subsequent decease of his abandoned wife in this state, he is estopped from taking advantage of the fact that the judgment of divorce so rendered was void for want of proper service of the summons, and he cannot successfully assert against the heirs or devisees of his former wife a right to her estate as her surviving husband.

**Same.**

*Held*, further, that the doctrine of estoppel is applied in this case upon the ground that it is one solely relating to property rights, unaffected by any considerations which give to the marriage relation its precise status.

Action in the district court for St. Louis county by William F. Marvin against Clarence H. Foster and Mary P. Foster, his wife, and Edward H. Foster and Sarah C. Foster, his wife, for partition. The case was tried before Lewis, J., without a jury, who ordered judgment in favor of defendants. The facts are stated in the opinion. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*James Spencer*, for appellant.

*J. Fawcett* and *Draper, Davis & Hollister*, for respondents.

BUCK, J. This action was brought for a partition of certain lots and parcels of land situate in the city of Duluth, or, if a partition could not be made without material injury to the rights and interests of the parties, then that a sale thereof be made.

[1] Reported in 63 N. W. 484.

In order to dispose properly of the questions raised in this case, we will refer to the facts as briefly as possible: In the year 1842 Thomas Foster and Hannah C. Foster, referred to in the pleadings, intermarried, and lived together as husband and wife until some time in the year 1873, and between the years 1851 and 1873 they were residents of the state of Minnesota. While they were such residents, and living in the city of Duluth, Thomas Foster left his wife, went to the city of Washington, D. C., and was there employed by the United States government, where he remained in that position for some years. The court below found as a fact that after the time that Thomas Foster left his wife in Duluth, in 1873, down to the time of her death there on January 20, 1891, he did not furnish her any money, or in any manner provide for her support, and that he never returned to the city of Duluth after he left there in 1873, and that he has ever since that time been, and at the time of the finding of the court below he was, a nonresident of the state of Minnesota. On March 8, 1877, the said Hannah C. Foster began proceedings in the district court of St. Louis county against the said Thomas Foster for a divorce from the bonds of matrimony, and for a decree confirming the title of said Hannah C. Foster in and to all of the lands described in the complaint, as well as to certain other lands. In this action the proceedings were regular in form, except a defect in the service of the summons; it appearing that in fact the summons was never served upon the said Thomas Foster, the defendant therein, in the manner and form required by law, that said court did not acquire jurisdiction of said defendant in said action for divorce, and that the decree which was by said court therein granted was in fact null and void and of no legal effect as a decree for divorce, but that in all other respects, except as to the service of said summons, the proceedings were regular in form. And such proceedings were had in such case that on May 30, 1877, a judgment of divorce was rendered in said court in favor of Hannah C. Foster and against the said Thomas Foster, divorcing said parties from the bonds of matrimony, and also confirming in said Hannah C. Foster an absolute title in fee to all the lands described in the complaint.

During the pendency of said action for divorce, and before the rendition of the judgment therein, said Thomas Foster had actual

knowledge of the pendency of said action, and could have defended the same before the time for answering therein had expired, and before the expiration of the time for answering the complaint therein said Thomas Foster, knowing of the pendency of said action, wrote and mailed a letter to the judge of the said district court, stating therein that he had no objections to the granting of said divorce. After the judgment of divorce was granted in said action, and before the expiration of the time to appeal therefrom, the said Thomas Foster, with full knowledge of the said divorce proceedings, held himself out to one Mary Baum, then an unmarried woman of the city of Washington, as an unmarried man, and for the purpose of inducing her to marry him, represented to her that his former wife, Hannah C. Foster, had obtained a divorce from him, and that he was free to marry again, he at the same time showing her a copy of a newspaper containing a notice of the granting of the decree of divorce; and she, relying upon the truthfulness of said representations, was married to said Thomas Foster some time in the year 1877, and they lived and cohabited as husband and wife until the trial of this action, and were then so living together.   On January 9, 1878, a son was born to said Thomas Foster and Mary Foster, who was living with his parents at the time of the trial of this action.

At the time when Thomas Foster left his wife in 1873, she owned the property in controversy, and continued to own it until the time of her death, in January, 1891.   But Thomas Foster never at any time after the judgment of divorce asserted any claim or interest in or to any of the said property, nor did he in any manner attempt to exercise any control over it, prior to Hannah C. Foster's death, but she lived and transacted her business as an unmarried woman, and had exclusive control thereof; the said Thomas Foster continually claiming to be the husband of said Mary Baum, and not the husband of Hannah C. Foster.   At the time of her death she was the owner of the land described in the plaintiff's complaint, and she left surviving her two sons, her only heirs at law, viz. Clarence H. Foster and Edward H. Foster, the defendants herein; but, since the action was commenced, Clarence H. Foster has died, and by his last will he made the defendant Mary P. Foster sole devisee of all his estate, which will has been duly probated.   Whatever right, title,

interest, claim, or estate Thomas Foster had, if any, in and to the property of said Hannah C. Foster at the time of her death, has been conveyed to this plaintiff, who brings this action in partition, but who took said conveyance with knowledge of the foregoing facts.

We cannot agree with the contention of the appellant that the only question in the case is whether Thomas Foster was the surviving husband of Hannah C. Foster. It must be conceded that the judgment of divorce rendered May 30, 1877, in the action of Hannah C. Foster against Thomas Foster was invalid for want of service of the summons therein upon him. But the conduct of Thomas Foster since his abandonment of his wife in 1873, and his subsequent conduct down to the time of the death of his wife Hannah C. Foster, presents itself for our consideration, and must be considered in connection with the judgment of divorce between the parties, even though that judgment was void. The question is one of grave importance, because it is not one where the parties to the action are alone concerned, but the rights of society and of the state are involved.

We state the question, then: Where in 1873 a husband left his wife and home in this state, and lived in the city of Washington without supporting her, and never lived with her again or returned to this state, and she obtained judgment of divorce against him May 30, 1877, upon the grounds of desertion, but which judgment was void for a defective service of the summons, but of the pendency of which action he had actual notice, and declined to appear and defend, but afterwards, upon learning that a divorce had been granted, married another woman, with whom he lived and cohabited as his wife, and she had a child by him, can he, upon the subsequent decease of his abandoned wife, take advantage of the fact that the judgment of divorce so rendered is void for want of proper service of the summons, and successfully assert against the heirs or devisees of his former wife a right to her estate as her surviving husband?

If Thomas Foster had challenged the validity of the judgment of divorce, instead of availing himself of its benefits from the time of its rendition until the death of Hannah C. Foster aforesaid, about 14 years, and had not during such time committed acts which were so inconsistent with his duties as the husband of Hannah C. Foster, there would be but little, if any, merit in the defense. But upon

learning of the decree of divorce, he took no steps to investigate its validity, except to inquire about the value of the property standing in his wife's name, and when told it was of little value, seemed content to let the decree stand, and hastened to marry another woman, and enjoy the fruits of that marriage until his former wife's death in 1891.

It is seldom that we have presented for our consideration a more heartless case of a husband's inhumanity to a wife than is presented by the record herein. They came to Minnesota soon after its organization as a territory, and, enduring the usual vicissitudes and hardships of a pioneer life, she bore him two sons, and, with the maternal instincts of true motherhood, cared for them in childhood and early manhood, and, when weighed down with troubles and advancing years, is deserted by the one who, above all others, should have been a true husband, and all that it implies. Not only this, but for months she took care of Thomas Foster's own helpless and suffering relatives, and, when in sorrow and despair, she writes him about the "debts and drag" which were her lot. Well did the court below describe this letter as pathetic. In it she says: "The property that gives us our living will be sold at auction the last of this month (and it might have been saved for the present, at least), but still I have my home to shelter me, if I can pay the taxes; but in some way I must earn my bread, without you send me the means to live." And we think the court below was fully justified in finding that he did not furnish his wife any money, or in any manner provide for her support, after he left her in 1873.

Whether Thomas Foster knew of the invalidity of the judgment of divorce at the time of its rendition, we do not regard as material in this case. He did know of it many years prior to the time of the death of his first wife, and it was his duty to know whether the judgment was valid or not before he again married, and committed the crime of bigamy. Living in Minnesota for many years, he was presumed to know its laws, and to know that an action for divorce could not be legally granted without due service of the summons upon the defendant in such proceedings. Having violated every marital duty and obligation to the wife whose life he had blighted, he waits until death has ended her sufferings, and then, exhibiting a speculative mood, transfers his right in the property to this plain-

tiff. If the court awards him the pecuniary advantages claimed, then the estate of the deceased wife and mother is to be equally divided between them.

Living with a second wife for 14 years, and raising a child by her, during a period of time when he says that in law he was still the husband of the former wife, is too much of a mockery of law, a travesty upon justice, and an insult to the morality and decency of a civilized government, to be tolerated; and, if there were no legal precedents against such a claim, we should not hesitate to establish one.

Fortunately there are established rules of equity which come to our aid, and enable us to uphold the sacred obligations of the marital relation, and vindicate the sacredness of the family ties. The record in this case fully discloses the fact that Thomas Foster voluntarily accepted the privileges, benefits, and fruits of the void judgment of divorce, and he is thereby estopped from claiming any portion of the estate of his deceased wife. This estoppel refers, of course, to the property rights of Thomas Foster. Whether he could be punished for bigamy is not a question before us, and the question of all marital rights growing out of his conduct is not involved here, except so far as the property immediately in dispute is concerned.

The case is not one where there can be any collusion between the parties, for Hannah C. Foster is dead and the various rights and obligations growing out of the marriage relation between her and Thomas Foster are only considered with reference to his own conduct, so far as he claims a right to a share in her estate.

In 2 Bishop, Mar. & Div. § 751a, it is said: "If a party has used the privileges of a decree of divorce, he has thereby affirmed it, and he is too late to complain of any of its burdens. On this principle, where a man appealing from a decree dissolving his marriage married again, his appeal was dismissed, for, by the marriage, he had affirmed the validity of the divorce. Besides to permit him to prosecute his appeal would be an injustice to his innocent second wife." This states the rule broadly, but, as we construe it, it is applicable to the party who has been guilty of the wrong, and who is seeking to take advantage of that wrong. A void judgment of divorce cannot be legalized by the acts of the divorced parties, except so far as either one is estopped by his or her own wrongful conduct in en-

joying its benefits, fruits, and privileges. Thus a party who has, as plaintiff, obtained a fraudulent judgment of divorce should not be permitted to enjoy its benefits, nor be allowed to assert its validity, for his own advantage. So, too, the same rule should be applied to the defendant who, knowing of a void judgment of divorce against him, acquiesces in it for many years, treats it as valid, permanently renounces his marital obligations, remarries, and who has a child by a second marriage, and he should not be permitted to take advantage of his own wrong.

Good morals, as well as good law, forbid it. The innocent second wife should not be made the victim of his turpitude, and the helpless child should not have the stain of illegitimacy resting upon it by Foster now asserting that he is the husband of a former wife. He may publish his own shame to the world for a money consideration; but this court will not aid him to stigmatize his second wife as living an adulterous life, nor hold that her child is a bastard. See Arthur v. Israel, 15 Colo. 147, 25 Pac. 81; Mohler v. Shank's Estate (Iowa) 61 N. W. 981; Estate of Richardson, 132 Pa. St. 292, 19 Atl. 82.

As we have before intimated, and to avoid any chance for an impression that we lend any countenance to the idea that parties may become divorced upon the ground of estoppel by conduct, we repeat that this action is one relating solely to property rights, unaffected by any considerations which give to the marriage relation its precise status. The marriage relation between Foster and his deceased wife, with all its duties and obligations, has been terminated by her death; and he is now asserting this former relation, and the invalidity of the decree of divorce, solely for the purpose of obtaining her property. It is to such a state of facts, and in such an action, that we apply the doctrine of estoppel. Beyond this we do not go.

We do not think that the record discloses any reversible errors, and the order of the lower court is affirmed.