ALLIE CLUTE, APPELLANT, V. OSCAR CLUTE, APPELLEE.

FILED MAY 17, 1913. No. 17,197.

Divorce: REVIEW: PROPERTY RIGHTS: ADJUSTMENT. Record examined
and *held:* (1) The evidence is not of such a character as to
justify a review of the decree of divorce. (2) In equity and good
conscience, the property of the parties, accumulated by their
joint efforts during a long period of years, should be treated as
joint property in equal shares. (3) The joint possession and use
of the property having by the decree been terminated by reason
of the wrong-doing of the defendant, in whom the title rests, he
should account to the plaintiff for the reasonable value of her
share. (4) Land in another state, recently inherited by plaintiff
from her father, should not be included in the accounting.

APPEAL from the district court for Furnas county:
ROBERT C. ORR, JUDGE. *Affirmed as modified.*

*Lambe & Butler,* for appellant.

*W. S. Morlan, contra.*

FAWCETT, J.

Plaintiff brought suit in the district court for Furnas
county for a divorce on the ground of extreme cruelty,
and for alimony, suit money and attorney's fees. The
answer denied the cruelty, and controverted plaintiff's
allegations as to the value of the property, the title to
which was in defendant. The court found generally in
favor of the plaintiff on the question of cruelty, and
awarded her a divorce; allowed her $3,100 permanent
alimony, and denied her application for attorney's fees
and suit money. From all of the decree, except as to the
granting of the divorce, plaintiff has appealed.

The evidence shows a condition of affairs in this family
which perhaps would have justified the court in refusing
relief to either party. The language used by defendant to
plaintiff, both when they were alone and in the presence
of third parties, and the contents of a letter written by him

to her a few years before the separation, are too degrading
to be permitted to disgrace the pages of our published
reports. We turn from them with disgust. The conduct
of plaintiff, judging from her admissions upon cross-ex-
amination, was evidently little better. It is true, she tes-
tified that her conduct in the premises was in resistance
to his. The letter above referred to was written to her
while she was absent in Wisconsin. When asked if she
remonstrated with him for the way he had written, she
answered, "No, I didn't. I said I would settle that when
I seen him." She was then asked, "Did you?" To which
she answered, "Sure, I did." She also admitted that she
wrote just as bad letters to him as he did to her, and that
whenever he was abusing her she "tried to keep even with
him." The record also shows that, while they were living
together, plaintiff's brother, a man over 40 years of age,
was permitted to bring to their home a "lady friend" and
live with her there as if they were husband and wife, al-
though plaintiff admits they knew that the brother and
his "friend" were not married. It is evident that these
parties have little conception, and certainly no apprecia-
tion, of the sanctity of the marriage relation. They lived
a cat and dog life, and disregarded all ideas of morality
and decency to such an extent that they invited their son
and his wife and child to a Sunday dinner, at which plain-
tiff's brother and his "friend" were present. These things
were permitted, not only by plaintiff, but by defendant as
well, who, if he had possessed any of the instincts of true
manhood, would, as the head of the family, have banished
the brother-in-law and his adulterous friend from the
home. Under these circumstances, as said in *Arthur v.
Israel*, 15 Colo. 147, the parties "cannot complain if we
insist upon treating the present controversy as one relat-
ing solely to property rights, unaffected by those legal
considerations which give to marriage and the family their
peculiar status, with accompanying special privileges and
protection." The doctrine of that case is considered and
fully affirmed in *Marvin v. Foster*, 61 Minn. 154. We

therefore decline to review the record as to the granting of the divorce, and will consider only the property rights of the parties.

The record shows that about 34 years before the filing of the petition in this case the parties, then recently married, settled in Furnas county. That county was then a part of the western frontier. Neither had any money nor property at that time. The privations and hardships which they must have endured during the succeeding 34 years, in sustaining life, establishing a home, and raising a family of three children to manhood and womanhood and until they were married and settled in homes of their own, must have been great. During all of those years plaintiff was faithful in the performance of her full share of the work. She did all the housework, milked the cows, fed the calves and pigs, raised chickens, made butter, and with the butter and eggs contributed largely to the support of the family, thus materially aiding in the accumulation of their property. During the last 15 years it is undisputed that defendant led an intemperate life. While the plaintiff was at home doing the chores and looking after things generally, he would be in town on drunken sprees, from which he would return sullen, cross and quarrelsome. The last four or five years of their married life his sprees were not so frequent, but they were not entirely discontinued. Two or three times each year he would indulge his propensity in that direction. Under these circumstances, we think that, in determining the question we are now considering, these parties should not be considered as a husband and wife. They have no appreciation of that relationship. It would be more consonant with their true relations to consider them simply as a man and women engaged in the business of earning a living and accumulating property—a sort of copartnership, so to speak.

Conceding that defendant did his part, which, under the evidence, is treating him very liberally, their interests in the property should be treated as equal, undivided in-

terests, and, their joint use and possession having by the court been dissolved by reason of the wrong-doing of the defendant, he should now be required to account to the plaintiff for her full share in the joint assets. The property consists of 240 acres of land, upon which there was a mortgage for $300. The record is not entirely clear as to whether this mortgage has been paid off. We are inclined to think it has been paid, but will permit defendant to have the benefit of the doubt, and will give him credit for that amount. Plaintiff testified that the land was worth $60 an acre. A neighbor placed the value at $42.50 an acre, but upon cross-examination he varied so much that it is hard to tell what his estimate is. Defendant himself testified that it is worth from $30 to $35 an acre. We are satisfied that plaintiff's estimate is too high, and are inclined to think that that of defendant is too low. Here again we have concluded to give the defendant the benefit of the doubt, and will take his highest estimate of $35 an acre as the value of the land. This would make the land worth $8,400, from which we deduct the $300 mortgage, leaving the net value $8,100. At the time of the trial defendant had in his hands personal property which he concedes to be of the value of $1,460. Plaintiff contends that it was about $1,200 more than that sum, but we are unable from the record to verify her figures, and therefore take the figures of defendant. This makes the net value of the estate at the time of the divorce $9,560. This sum divided by two shows the interest of each in the joint assets to be $4,780. If that sum be allowed plaintiff, she will then be obtaining her full interest in the property, and should not be allowed anything else in the way of suit money or attorney's fees. Each party, receiving one-half of the assets, should pay his or her expenses in the litigation.

It appears that, at the time of trial below, plaintiff had become the owner, by inheritance from her father, of 120 acres of land in Wisconsin, the value of which she places at $2,500. Defendant insists that the value of that prop-

erty should be taken into account in fixing the amount of plaintiff's allowance in this case. While the rule contended for might be sound under some circumstances, which we do not decide, it cannot be applied here. We are disposing of the property rights of the parties under the general rules of equity as to an accounting between joint owners of property, who are unable to agree upon a division of the same after their joint possession and use has been terminated. In such a case, where the parties have contributed equally to the joint fund, they are entitled to an equal division thereof, without reference to property which either may own individually, and to the acquirement of which the other did not contribute.

On June 22, 1911, we entered an order allowing plaintiff $100 as suit money, $100 attorney's fees, and $25 monthly as temporary alimony from July 1, 1911, until the further order of the court. Defendant having refused to pay this allowance, an execution was issued, which has been returned unsatisfied. It appears, therefore, that nothing has ever been paid under that order.

The judgment of the district court is modified and the cause remanded, with directions to enter a decree in favor of plaintiff for $4,780, and with the further direction that if it is made to appear that defendant has paid plaintiff any sum whatever under our order of June 22, 1911, above set out, such sum be deducted from said sum of $4,780. If defendant so elects, he may, in lieu of the specific judgment awarded, pay to plaintiff $730, being one-half of the personal property, and have an equal partition of the real estate under the direction of the district court. The decree as to the divorce is affirmed.

AFFIRMED AS MODIFIED.

BARNES, SEDGWICK and HAMER, JJ., not sitting.