LIVINGSTON *v.* LIVINGSTON.

1. DIVORCE—COLLUSION—VERIFICATION.
    In a divorce proceeding assertions of noncollusion and verification of the bill of complaint are required in this State both by court rule and by statute (Court Rule No. 51 [1931]; 3 Comp. Laws 1929, § 12732).

2. SAME—ESTOPPEL—DEATH.
    Wife who appeared in divorce proceedings, answered the bill, admitted there was no collusion and accepted the full benefits of the decree which, both in form and substance, was approved by the attorney who then represented her *held*, estopped to attack decree after husband's death in order to obtain property of which he died seized and which would otherwise escheat to the State, because bill had not been verified in accordance with statute and court rule (Court Rule No. 51 [1931]; 3 Comp. Laws 1929, § 12732).

3. SAME—INTEREST OF STATE.
    Restoration or alteration of marital status is the only phase of a divorce proceeding in which the State is interested and the only reason for the statutory provision touching collusion. (3 Comp. Laws 1929, § 12732).

4. SAME—JURISDICTION—VOID DECREE—ESTOPPEL.
   One who accepts the benefits of the property provisions of a divorce decree cannot be heard to question jurisdiction of the court which rendered it.

Appeal from Wayne; Webster (Arthur), J. Submitted April 24, 1936. (Docket No. 67, Calendar No. 38,888.) Decided June 16, 1936. Rehearing denied September 2, 1936.

Bill by Angus John Livingston against Martha B. Livingston for divorce on ground of extreme and repeated cruelty. On petition to vacate decree. Petition dismissed. Defendant appeals. Affirmed.

*Sidney K. Meyer,* for defendant.

*David H. Crowley,* Attorney General, and *Edmund E. Shepherd* and *Buell A. Doelle,* Assistants Attorney General, for Attorney General and State Public Administrator.

NORTH, C. J. In July, 1931, Angus John Livingston filed a bill for divorce from his wife, Martha B. Livingston. She was served with process, entered her appearance by an attorney, and filed an answer. Thereupon the cause was referred to the friend of the court who in the capacity of a notary public took testimony touching the property rights of the parties and reported to the court with his recommendation thereon. Testimony on the divorce issue was taken in open court and a divorce decreed to the husband May 27, 1932. The proposed decree was indorsed with the approval of the defendant's attorney "as to form and substance." In adjusting property rights the decree gave to the husband, Angus J. Livingston, two vacant lots and a house and lot, and to the wife, Martha B. Livingston, cer-

tain real estate; and to bring about an equitable division the husband was decreed to pay the wife $605.52, which amount she received and receipted therefor. Prior to the decree title to the house and lot which the court gave to the husband had been held jointly in the entireties by the husband and wife. Mr. Livingston died intestate January 1, 1934, and proceedings to probate his estate were instituted.

In August, 1935, Mrs. Livingston filed a petition in the divorce case praying that the decree of divorce be vacated. The ground upon which the relief was sought is that the jurat attached to the bill of divorce disavowing collusion was not signed by a notary public or any other official authorized to administer an oath. In other words the bill of complaint does not appear to have been sworn to nor was there denial of collusion by the plaintiff under oath.

Notwithstanding Mrs. Livingston's unsworn answer admitting the plaintiff's allegation of noncollusion, her contention in brief is that divorce proceedings are wholly statutory, and that since the bill of divorce failed in the particular noted to comply with the statutory requirement, the court did not obtain jurisdiction. In a divorce proceeding assertions of noncollusion and verification of the bill of complaint are required in this State both by court rule and by statute. Court Rule No. 51 (1931); 3 Comp. Laws 1929, § 12732. The circuit judge held against Mrs. Livingston's contention and dismissed her petition. She has appealed.

If appellant is denied the relief sought the estate of Mr. Livingston will escheat to the State of Michigan. On this account the State public administrator and the State board of escheats, through the attorney general, appeared in the proceedings in the

circuit court and in the capacity of appellees have appeared and filed a brief in this court. It is the contention of the attorney general that under the circumstances of this case appellant is estopped from now questioning the validity of the decree entered in the divorce proceedings. This presents the issue for determination.

We may assume, as appellant asserts, that she did not actually discover the defect in her husband's bill for divorce until after his death; nonetheless she must be charged with full knowledge of such defect at the time the divorce case was pending because she appeared in the case, answered the bill, admitted there was no collusion, and accepted the full benefits of the decree which both in form and substance was approved by the attorney who then represented her. Under such circumstances petitioner can hardly be said to now come before the same court in equity with clean hands in a proceeding which concerns only her claim of a right to take property of which her former husband died seized. For this reason alone the relief sought might well be denied and appellant left where she put herself.

Mr. Livingston died before this petition was filed, and it is now beyond the power of the court to restore or alter the marital relation. That was the only phase of the divorce case in which the State was interested and the only reason for the statutory provision touching collusion. The other matter adjudicated in the divorce case was the property rights of the respective parties. In that phase of the decree appellant acquiesced, as she had a right to do. She accepted the benefits of the decree. She does not claim there was in fact any collusion in the divorce proceedings; and she should not now, years after the decree was entered, be permitted to profit

by nullifying its provisions which determined the respective property rights of herself and her husband.

"One who accepts the benefits of a decree of divorce cannot be heard to question the jurisdiction of the court which rendered it." *Jackson City Bank & Trust Co.* v. *Fredrick,* 271 Mich. 538, 546.

See, also, *Carlisle* v. *Carlisle,* 96 Mich. 128.

In a like case the supreme court of Iowa has said:

"A party * * * may perform the acts required by a void decree, *or accept its benefits,* and thereby estop himself from questioning the decree. In other words, a party to a void judgment or decree may be estopped from attacking it either directly or indirectly. * * *

"In *Ellis* v. *White,* 61 Iowa, 644 (17 N. W. 28), where plaintiff procured a divorce and alimony upon a petition which she afterwards claimed did not give the court jurisdiction, it was held that, whether the court had or had not jurisdiction, she, having accepted the benefits of the decree, could not be heard to question the jurisdiction of the court to render it. * * * (Citing numerous cases.)

"This exception to the doctrine that a judgment or decree entered without jurisdiction is absolutely void is founded upon the plainest principles of justice. As applied to the case at bar, it is but the enforcement of the legal maxim that the law will not permit a person to take advantage of his own wrong. * * * But we discover no reason why the law of estoppel may not be applied to her acts in a case like this." *Mohler* v. *Estate of Shank,* 93 Iowa, 273, 280 (61 N. W. 981, 34 L. R. A. 161, 57 Am. St. Rep. 274).

Also in a like case the supreme court of Minnesota has said:

"As we have before intimated, and to avoid any chance for an impression that we lend any counte-

nance to the idea that parties may become divorced upon the ground of estoppel by conduct, we repeat that this action is one relating solely to property rights, unaffected by any considerations which give to the marriage relation its precise status. The marriage relation between Foster (defendant in the divorce case) and his deceased wife, with all its duties and obligations, has been terminated by her death; and he is now asserting this former relation, and the invalidity of the decree of divorce, solely for the purpose of obtaining her property. It is to such a state of facts, and in such an action, that we apply the doctrine of estoppel. Beyond this we do not go." *Marvin* v. *Foster,* 61 Minn. 154, 160 (63 N. W. 484, 52 Am. St. Rep. 586).

Many other cases might be cited, but we note only the following: *Estate of W. T. Richardson, deceased,* 132 Pa. 292 (19 Atl. 82); *In re Swales' Estate,* 60 App. Div. 599 (70 N. Y. Supp. 220); *Frances G. Brigham, petitioner* (decision on ground of laches), 176 Mass. 223 (57 N. E. 328); *Arthur* v. *Israel,* 15 Col. 147 (25 Pac. 81, 10 L. R. A. 693, 22 Am. St. Rep. 381). The general holding in these and other like cases is that notwithstanding an adjudication in a divorce suit is involved, the party seeking to avoid decree may be prevented by estoppel or laches.

The order of the circuit judge dismissing the petition of Martha B. Livingston is affirmed. The State public administrator and the State board of escheats will have costs.

Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred. Toy, J., did not sit. Potter, J., took no part in this decision.