LOFTIS *v*. DEARING.

(*Nashville*, December Term, 1946.)

Opinion filed May 3, 1947.

HAILE & HARRIS, of Cookeville, and JAS. C. CARTER, JR., of Tompkinsville, Ky., for appellant.

WESLEY P. FLATT and E. H. BOYD, both of Cookeville, for appellee.

MR. SPECIAL JUSTICE NORMAN FARRELL delivered the opinion of the Court.*

The original bill in this cause was filed December 12, 1944, in the Chancery Court of Putnam County by Allie Mai Loftis, as administratrix of her deceased son, Frank Allen Harris, and also in her own right, against Ruby Nell Harris Dearing, a resident of Tompkinsville, Kentucky, but who was alleged to be temporarily in Putnam County, Tennessee.

The bill, after alleging the complainant's qualification as administratrix of her deceased son; his death at Taft, California, on September 13, 1944, while a member of the United States Army; that no funds had come into her hands as admnistratrix; that some $800 of claims had been filed against her son's estate; then proceeded to

---

*Sitting for Chief Justice Grafton Green.

state that on May 17, 1941, the defendant had filed a suit for divorce against her son in Monroe County, Kentucky, and had later secured a divorce. A copy of the record in said divorce suit was attached as an exhibit to the bill.

She further alleged in her bill that said divorce decree was void upon a number of stated grounds and prayed that it be so declared.

It was further alleged that the said Frank Allen Harris left a National Service Life Insurance policy in the sum of $10,000, and the complainant averred that, if the aforesaid decree of divorce was set aside, the complainant, named as beneficiary therein at the time of said divorce decree, would be entitled to its proceeds for the reason, as was averred, that "anything the deceased may have done thereafter with regard to a change of the beneficiary would be a nullity and for nothing held." What her deceased son had done thereafter was not stated. In conclusion the bill prayed that the divorce decree in Kentucky be held void and that complainant either as administratrix, or in her own right, be held entitled to recover on the policy.

On May 5, 1945, Mrs. Marian Elizabeth Harris, a resident of California, was allowed to intervene in the cause, and in her intervening petition she averred herself to be the lawful widow of Frank Allen Harris and that a posthumous child had been born to the parties on December 27, 1944.

The original complainant answered this intervening petition and denied that the intervening petitioner was the lawful widow of her son, and further stated that since filing her original bill the sum of $146 had come into her hands as administratrix.

A few days later the intervening petitioner filed an amended petition in which she averred that Frank Allen

Harris, after the Kentucky divorce, married one Callie Mai McKamay and was divorced from said Callie Mai McKamay on December 19, 1942. A copy of the $10,000 insurance policy was attached to her amended petition showing that on May 6, 1943, the assured "cancelled all previous designations of beneficiaries under the above policy" and named the intervening petitioner as principal beneficiary and the complainant, his mother, as contingent beneficiary.

The original defendant, Ruby Nell Harris Dearing, filed an answer to the bill denying that the divorce she secured in Kentucky was void for any of the reasons stated. Thereafter, Marian Elizabeth Harris demurred to the original bill, as amended, on several grounds. The sixth ground of her demurrer was as follows: "That on the pleadings, together with the amended complaint, shows upon its face that this Court has no jurisdiction to determine whether or not the complainant, Allie Mai Loftis, is the true, legal and lawful beneficiary to the government insurance policy, that being a matter between the government and those claiming under its benefits, and the government not being made a party to this cause the Court certainly would be without jurisdiction to decree upon the same in any wise."

And on the same day the intervening petitioner, Marian Elizabeth Harris, without waiving her demurrer, filed an answer asserting that Frank Allen Harris was estopped by his subsequent marriages to question the validity of the Kentucky divorce and that complainant was equally estopped. On August 17, 1945, the cause was heard before the Chancellor upon the pleadings, stipulation and oral proof. He held the determinative question was whether the Kentucky divorce was void for want of jurisdiction. He was of the opinion that it was, since the

Kentucky statute, Civ. Code Prac. sec. 423, required the complainant in a divorce suit "to allege and prove a residence in Kentucky for one year next before the commencement of the suit", and that this had not been shown by the record in that case.

The Chancellor further found that, in addition to his marriage to Ruby Nell Harris, the said Frank Allen Harris had subsequently married Callie Mai McKamay, from whom he was later divorced; and had then married Marian Elizabeth Harris, from whom he was never finally divorced. That while still married to Marian Elizabeth Harris he had married one Mildred Chapman on May 2, 1944, and that a child had been born of this marriage. Also, that his first wife, Ruby Nell Harris, after securing a divorce in Kentucky, had herself married one Dearing and that a child had been born of this last marriage. He further found there was no fraud in the procurement of the Kentucky divorce, but it was only void for the reasons heretofore stated.

The Chancellor sustained the sixth ground of the demurrer to the bill in the following language: "The United States is not a party to this case and I do not think it proper to decree who is entitled to the proceeds of the insurance policy. The demurrer should be sustained so far as that question is raised, and a decree will be drafted accordingly sustaining the bill insofar as it seeks to have the Kentucky divorce declared void for lack of jurisdiction."

A decree was drawn in conformity with this opinion. From the adverse portion of said decree Marian Elizabeth Harris alone appealed. The Court of Appeals affirmed the Chancellor, holding it was only necessary for them to pass upon one of the assignments of error—

namely, that the Kentucky divorce was void for the reason given by the Chancellor.

This Court granted *certiorari.*

In view of the facts stated, and especially the circumstances that no one appealed from the Chancellor's action with respect to the sixth ground of the demurrer, we think no one was left with sufficient legal interest to attack the validity of the Kentucky divorce decree, as will be hereinafter discussed.

██ ██ While the bill averred in general terms that the decree rendered in the Kentucky divorce was "void from the beginning" and that there was "no proof in the case that would support or justify the decree", and that the same was void "under the laws of the State of Tennessee and likewise the laws of Kentucky", no specific allegation of fact or law was made to support these general assertions or why this result would follow, except for some fifteen specific reasons stated in the bill. All the specific grounds of attack stated in the bill were held to be without merit, both by the Chancellor and the Court of Appeals, and both declared the divorce decree void solely and alone because the statute in Kentucky required a complainant in a divorce suit to "allege and prove" residence in Kentucky for one year next before the commencement of said suit. The law of Kentucky in this regard was never pleaded in the bill and this alleged failure to prove a residence of one year prior to bringing the suit by the complainant therein was never mentioned as a specific ground of attack on the decree in the bill. General averments that the Court had no jurisdiction, or that the judgment was void without alleging facts to sustain such charge, are but mere conclusions of law. 49 C. J., title "Pleadings", Section 47.

480

■ A cause, no matter how well proven, without appropriate pleading, is *coram non judice* and void. Gibson's Suits in Chancery, Section 406. Even in the amended complaint, the specific ground upon which the Chancellor and the Court of Appeals declared the decree void was never mentioned.

■ Finally, upon another ground we think the action of the Chancellor and the Court of Appeals was erroneous. On the facts of this case, the deceased, Frank Allen Harris, had actual knowledge of the Kentucky divorce within a few weeks after it was rendered, and, in fact, went to Kentucky to look into the matter with the complainant, his mother. Any action taken by him within thirty days could have easily rectified any injustice done him, had he so desired to take exception to it. Instead, he elected to do nothing, but acquiesced in the same and elected to take the benefits thereof by engaging in a series of subsequent marriages, as heretofore set out. His first wife also remarried and gave birth to a child. It is shown that not only did the deceased soldier remarry once thereafter, but thrice, and to two of these subsequent marriages children were born. Every consideration of law and morality should impel a court of equity to deny to such a party the standing to attack this Kentucky divorce decree and, we think, the complainant, as her son's administratrix, is equally estopped.

We are unable to concur in the conclusion reached by the two lower courts, that no one is estopped by a void judgment. In our opinion there are undoubtedly exceptions to this rule, and this case presents a state of fact bringing it within the exception.

In Freeman on Judgments, vol. 3, 5th Ed., Section 1438, it is stated: "Estoppel to Assert Invalidity.—While a void divorce decree cannot be legalized by act of the

parties, they may be estopped to assert its invalidity to their own advantage, as where they have enjoyed its fruits. This is true as to both parties. The commonest case of this kind involving the defendant is where he has acted upon the decree and remarried, in which event both he and those claiming under him will not be granted relief to which they can be entitled only by denying the validity of the divorce. It is also frequently asserted that one who has obtained a divorce will not be permitted to attack its validity, and this doctrine has been carried to the extent of denying the right of such a person to impeach the foreign decree for lack of jurisdiction either because the plaintiff was not domiciled within the state or the defendant was a non-resident served constructively. 'A party cannot invoke the jurisdiction and power of a court for the purpose of securing important rights from his adversary through its judgment and, after having obtained the relief desired, repudiate the action of the court on the ground that it was without jurisdiction. The question whether the court had jurisdiction either of the subject matter of the action or of the parties, is not important in such cases. Parties are barred from such conduct not because the judgment is conclusive as an adjudication, but for the reason that such a practice cannot be tolerated.' ''

In *Bruguiere* v. *Bruguiere,* 172 Cal. 199, 155 P. 988, 989, Ann. Cas. 1917E, 122, it was held that where a wife, knowing that her husband had obtained a divorce decree in Nevada, married another and lived with the new husband for several years, she was precluded from setting up that the Nevada divorce was invalid because obtained on fraudulent residence established in that state, and from claiming marital rights against her former husband, though at the time of her marriage she did not know

of the alleged invalidity of the decree, the Court saying: "The wife herself, when informed of the Nevada decree, acquiesced therein and proceeded to act thereon by herself entering into another marriage contract and living with the new husband for several years in accordance therewith. . . . The authorities are practically unanimous in favor of the proposition that a remarriage estops the party entering into it from denying the validity of the previous divorce. In *Marvin* v. *Foster,* 61 Minn. 154, 63 N. W. 484, 52 Am. St. Rep. 586, the decree of divorce showed want of jurisdiction on the face of the record and was consequently, void, even on collateral attack. The husband afterward married another person and lived with her for fourteen years. The court held that he was estopped to question the validity of the divorce. In *Mohler* v. *Shank's Estate,* 93 Iowa 273, 61 N. W. 981, 34 L. R. A. 161, 57 Am. St. Rep 274, where the facts were essentially the same, the wife, after a second marriage, attacked the decree. The court said: 'Having accepted the divorce as valid, in the way she did, she should be . . . estopped from maintaining any claim to any part of the estate of her former husband.' In *Arthur* v. *Israel,* 15 Colo. 147, 25 P. 81, 10 L. R. A. 693, 22 Am. St. Rep. 381, speaking of a similar case, the court said: 'We discover, upon principle, no sufficient reason why petitioner's conduct in the premises should not produce just as effective an estoppel as if she had received the proceeds of a void judgment for money. By her subsequent marriage with Israel during Arthur's lifetime she accepted, as far as within her power, the benefits or privileges of the divorce decrees. The fact that she did not then know that these decrees, were void is a matter of no more consequence than is the ignorance in this

respect of one who, knowingly in all other particulars, receives the fruits of an ordinary void judgment at law.' ''

In the volume dealing with Conflict of Law issued by the American Law Institute, in Section 112, it is said: ''The validity of a divorce decree cannot be questioned in a proceeding concerning any right or other interest arising out of the marital relation, either by a spouse who has obtained such a decree of divorce from a court which had no jurisdiction, or by a·spouse who takes advantage of such decree by remarrying.''

Inasmuch as we hold that neither Frank Allen Harris, the deceased, nor the complainant, in her capacity as his administratrix, was in a position to attack the Kentucky decree of divorce, it is unnecessary for us to consider whether this estoppel would extend to a named beneficiary in the policy. This last question was effectually removed from the litigation by the Chancellor's action in sustaining the sixth ground of the demurrer.

For the reasons stated, the decrees of the Court of Appeals and the Chancellor are reversed and the cause remanded for further proceedings not inconsistent with this opinion.

The cost of the appeal will be taxed to the complainant, Allie Mai Loftis, and the sureties on her cost bond, Thurman Loftis and W. P. Flatt. The cost in the Chancery Court will abide the past and future orders of the Chancellor.