## No. 27706

**The People of the State of Colorado ex rel., C. J. Kuiper, State Engineer, and Robert W. Jesse, Division Engineer; The Board of Waterworks of Pueblo, Colorado v. George Winden, Ebert L. Hawkins and F. E. Whittmore; The Colorado Canal Company, Lake Henry Reservoir Company, Lake Meredith Reservoir Company, Fort Lyon Canal Company and Holbrook Mutual Irrigating Company**

(580 P.2d 1238)

Decided June 26, 1978.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Donald H. Hamburg, Special Assistant, for plaintiffs-appellees.

Petersen & Fonda, P.C., William F. Mattoon, for involuntary plaintiff-appellee.

Moses, Wittemyer, Harrison and Woodruff, P.C., Raphael J. Moses; Lefferdink, Legg & Lefferdink; Ralph N. Wadleigh; Lawrence L. Fenton, for intervenors-appellees.

Jenkins, O'Rourke & Sandstrom, P.C., G. F. Sandstrom, for defendants-appellants.

8

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

In this action the State Engineer and a division engineer were successful in obtaining an injunction enjoining the defendants from irrigating certain lands with well water. We affirm in part and reverse in part, and remand for a rehearing as to one issue.

In this opinion references to the parties will be as follows: The plaintiffs-appellees State Engineer and division engineer will be referred to collectively as "State Engineer." The involuntary Plaintiff-Appellee, The Board of Water Works of Pueblo, Colorado, will be referred to as "Pueblo." The Defendant-Appellants George Winden, Ebert L. Hawkins and F. E. Wittmore will be called the "defendants." We refer to the Intervenors-Appellees as the "intervenors." The Booth Orchard Grove Ditch Company (not a party here) will be called "Booth Co."

The Booth Co. held a number of decrees for water from the Arkansas River, and transported the water through its Booth Orchard Grove Ditch, delivering it to its shareholders for irrigation of the shareholders' land. The defendants were shareholders in Booth Co.

Pueblo and Booth Co. entered into an agreement whereby, subject to certain conditions, Pueblo would purchase Booth's water rights for approximately $4,500,000. Booth Co. and Pueblo filed an application in the District Court for Water Division No. 2, praying for changes to alternate points of diversion and for change of use. This was Case No. W-145. The intervenors and others objected. Later, Pueblo, Booth Co. and the objectors reached an agreement and entered into stipulations, under which the water court heard evidence and on April 15, 1972, entered a decree.

This decree permitted the requested changes. It provided:
"[T]he lands historically irrigated by use of water diverted under the water rights which are the subject of this action shall be permanently removed from agricultural irrigation by means of water withdrawn from the Arkansas River, its tributaries *or underground water tributary thereto.*
. . . The lands upon which this prohibition shall operate are those lands shown in shading on the attached map, Exhibit A. . . ." (Emphasis added)

A special meeting of the shareholders of Booth Co. was held on August 31, 1972. Notice of this meeting was sent in advance to the shareholders, including the defendants, advising that one of the purposes of the meeting was to consider and vote upon a plan of complete liquidation and dissolution of the corporation. The notice further provided:

"[One of the purposes of the meeting is to] review and again vote upon a proposal to sell substantially all of the corporation's assets to the Board of Water Works in Pueblo, Colorado, in accordance with the contract enclosed. That is the same contract approved by you at the meeting of shareholders held on December 3, 1970. However, the transfer proceeding has now been concluded and the directors want the shareholders to review the contract along with the decree authorizing transfer of The Booth-Orchard Grove Ditch Company water rights to an alternate point of diversion. A copy of the decree is also enclosed."

At the meeting, which was attended by the defendants Winden and Hawkins, but not by the defendant Wittmore, there were explanations of the decree and the map. At this meeting the contract with Pueblo was overwhelmingly approved, the defendants Hawkins and Winden voting in favor of ratification. Dissolution of the corporation was also approved. Thereafter, the shareholders were paid their proportionate share of the assets, which consisted primarily of the funds received from the sale of the water rights to Pueblo. The defendant Hawkins received $100,000, defendant Winden approximately $42,500 and the defendant Whittmore approximately $17,500.

In 1975 it was brought to the attention of the State Engineer that the defendants were irrigating their lands, which were within the shaded area on the map, with well water which was tributary to the Arkansas River. Thereupon, the State Engineer brought the injunction action now before us.

As defenses the defendants asserted in the water court, and assert here, that they are not bound by the decree in Case No. W-145 for the reasons that they were not parties to the proceeding, they had no legal notice of the proceeding, and the use of well water was not involved in the case. The water judge ruled as follows:

"The Court does not make any ruling as to the validity of those arguments as such a determination is not necessary in disposing of this case, in view of the conduct of the Defendants subsequent to the entry of the Decree. For the purpose of this decision, again without determining these issues, the Court will assume that at the time of its entry, the Decree was void as to these Defendants."

The court then held against the defendants on the basis of estoppel. It said:

"'One who accepts and retains the fruits of a void judgment cannot afterwards repudiate his action and take advantage of its invalidity.' *Arthur v. Israel,* 15 Colo. 147, 25 P. 81, 82 (1890). This doctrine has been applied to those seeking collaterally to attack decrees adjudicating water rights. *Hinderlider v. Town of Berthoud,* 77 Colo. 504, 238 P. 64 (1925). Although it is generally held that the persons being estopped by his conduct must have been a party (or privy thereof) to the decree, the estoppel may

be applied to third parties in a proper case. *Freeman, Judgments* §§320, 1438 (5th ed. 1920)."

■ We agree with the conclusions of the water court that the defendants' wells pump waters which are tributary to the Arkansas River, and that the "continued use of tributary wells to irrigate lands historically irrigated by the Booth-Orchard Grove Ditch will deprive appropriators on the Arkansas River of water to which they are legally entitled." *See Kuiper v. Atchison, Topeka and Santa Fe Railway Company,* 195 Colo. 557, 581 P.2d 293.

The appellees make no attempt to claim that, absent estoppel, the defendants are bound by the decree in Case No. W-145; and the appellees merely ask affirmance of the water court's ruling which was predicated on estoppel.

■ Our reversal is upon the portion of the decree in Case No. W-145 which states, "The lands upon which this prohibition shall operate are those lands shown in shading on the attached map, Exhibit A."

## I.

■ We affirm the water court in its ruling as to the portion of the decree in Case No. W-145 which states:

"[T]he lands historically irrigated by use of water diverted under the water rights which are the subject of this action shall be permanently removed from agricultural irrigation by means of water withdrawn from the Arkansas River, its tributaries or underground water tributary thereto. . . ."

The evidence and the law support the water court's findings, conclusions and decree. In addition to the authorities as to estoppel cited by the water court, *see In Re Estate of Lee,* 170 Colo. 419, 462 P.2d 492 (1969); *Hunt v. Hunt,* 83 Colo. 282, 264 P. 662 (1928); *Kerr v. Burns,* 42 Colo. 285, 93 P. 1120 (1908); *Consolidated Home Supply Ditch and Res. Co. v. New Loveland & Greeley Irr. & Land Co.,* 27 Colo. 521, 62 P. 364 (1900); *Handy Ditch Co. v. South Side Ditch Co.,* 26 Colo. 333, 58 P. 30 (1899); *Boulder & Weld County Ditch Co. v. Lower Boulder Ditch Co.,* 22 Colo. 115, 43 P. 540 (1895); *Union Provision & Distributing Corp. v. Thomas J. Fischer & Co., Inc.,* 49 A.2d 85 (D.C. Mun. App. 1946); *Deering Harvester Co. v. Donovan,* 82 Minn. 162, 84 N.W. 745 (1901).

## II.

■ The defendant Hawkins has a well on land not in the shaded area. He claims that he has the right to water his land *within* the shaded areas with water from this well, or with waste water from irrigation of land outside the shaded area with water from the well. The well is tributary to the Arkansas River. The injunction against him is affirmed under our ruling above under point I.

### III.

There was testimony to the effect that one share of Booth Co. was required for proper irrigation of one acre.

A question was raised during the trial as to whether the shaded area on the map embraced lands of the defendants Whittmore and Winden not historically irrigated by Booth water, *i.e.,* the water involved in Case No. W-145. The evidence indicated that, from the time the defendant Whittmore purchased certain land in 1946, this land had been irrigated solely with well water and had not been irrigated with any Booth water. Yet, apparently, this land was within the shaded area.

The defendant Winden testified that he purchased 20 acres of land in 1961, which land had a well but no Booth water; that he did not have Booth Co. shares and did not use Booth water on the land; that in 1967 he purchased 10 additional acres with eight and one-half shares of Booth Co. Apparently, the shaded area of the map includes this 30 acres, plus other land leased by Winden.

It appears that there is a strong possibility that there is a conflict in the decree in that it orders the drying up of land historically irrigated by use of Booth water, but includes a map, designed to show this land, which in fact includes land not so historically irrigated. During oral argument before us, one of the attorneys for the appellees stated that it was their position that the land shown in the shaded area of the map should control over lands "historically irrigated." No authority has been cited to us for this proposition or to the contrary.

This is not a direct attack upon the decree, and we do not have jurisdiction to affirm the decree not to modify it. Our consideration is limited to the question of whether all provisions of the decree can be enforced in this proceeding under the theory of estoppel.

It is evident from the testimony and from the decree itself that the shaded areas of the map were to embrace only lands historically irrigated with Booth water. This is an equitable proceeding to obtain an injunction. We regard it as inequitable to enjoin persons in the position of the defendants Winden and Whittmore from using tributary well water upon land not historically irrigated with Booth water.

Upon remand, the court is directed to conduct a further evidentiary hearing and from this determine which, if any, lands of the defendants Winden and Whittmore have not been historically irrigated by water adjudicated to the Booth Orchard Grove Ditch and involved in Case No. W-145. After this determination, the water court is directed to dissolve the injunction insofar as it relates to lands of the defendants Winden and Whittmore which have not so been historically irrigated.

The judgment of the water court is affirmed in part and reversed in part, and the cause remanded for proceedings as directed.

MR. JUSTICE HODGES does not participate.