## MIMS *vs.* MIMS.

[BILL IN EQUITY BY WIFE FOR PERMANENT ALIMONY.]

1. *How wife, when insane, may sue.*—When the wife, suing by her next friend, files her bill for alimony against her husband, alleging insanity on her part, and cruelty and abandonment on the part of her husband ; and the husband answers, denying all the allegations of the bill, but failing to raise any objection on account of its form,—he cannot reverse the chancellor's decree, rendered on pleadings and proof, on the ground that the wife, if insane, should have sued by committee, and not by next friend. .

2. *Insanity excuses adultery.*—Adultery, committed by the wife while insane, is no bar to her claim for alimony.

3. *Abandonment of wife by husband entitles her to alimony.*—The legal abandonment of the wife by the husband, in driving her forth from his home without justifiable cause, and failing to furnish her with the means of support, entitles her to a decree for alimony.

APPEAL from the Chancery Court at Claiborne.

Heard before the Hon. WADE KEYES.

THIS bill was filed, in October, 1855, by Mrs. Parthenia Mims, a married woman, suing by her next friend, against Stanford Mims, her husband. Its material allegations were, that the said parties were married in July, 1839 ; that the defendant received about $2,000 in cash, the property of his wife, which he invested in negroes, who had largely increased in number and value when the bill was filed; that four children were born of the said marriage ; that the complainant, in 1847–8, "from long and continued neglect on the part of her husband, and almost insupportable abuse inflicted by him, became insane, and, after receiving many stripes at his hands, was driven by him from his house;" that she was received and cared for by her friends, who twice carried her back to her husband's house; that he refused to receive her each time, and again drove her forth ; that her friends then carried her to a lunatic asylum in Georgia, where she was at the filing of her bill; that her husband refused to make any provision for her support or maintenance, and would not

defray her expenses at the lunatic asylum; and that his estate was worth from $50,000 to $75,000. The prayer of the bill was, that a portion of the defendant's estate, sufficient for the complainant's support and maintenance during her life, might be set apart for her separate use, and a trustee be appointed to take charge of it.

The defendant filed an answer; admitting the marriage as charged in the bill, but denying all its other allegations respecting the complainant's insanity, his abandonment of her, &c.; averring that the complainant voluntarily left his house, without cause or provocation on his part; that she had previously committed adultery with several persons, and that whatever harshness he afterwards exhibited to her was caused by the discovery of this conduct on her part.

A great number of witnesses were examined in the cause—thirty by the complainant, and forty-one by the defendant. The limits of a report preclude the publication of an abstract of this mass of testimony, nor is it necessary to the understanding of the legal points decided by the court. It is sufficient to say, that the complainant's testimony establishes the allegations of her bill, as to her insanity for several years before the filing of her bill, her husband's cruelty towards her, and his refusal to receive and support her; while the defendant's testimony fully proves adultery on the part of the complainant with several persons.

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant, which the defendant now assigns as error.

CHILTON & GUNTER, for the appellant.

THOMAS WILLIAMS, *contra.*

RICE, C. J.—The bill was filed in October, 1855, in the name of the wife, by her next friend, against her husband, for *alimony.* It appears that she was insane when the bill was filed, and had been insane for several years before that time. The first question to be considered is, whether the respondent, who in his answer insisted she

was not insane, who took several depositions, who did not demur to the bill, and failed to move the court below to have the bill taken off the file, is now, after a decree on a hearing on pleadings and proof by the chancellor, entitled to reverse that decree upon the single ground, that the wife sued by next friend, and not by committee.

The *fifteenth* of our revised rules for the regulation of the practice in chancery is in the following words:

"*All bills* and petitions filed by married women, without their husbands, whether relating to their separate estate or not, shall be exhibited by next friend."—See 24 Ala., p. IV, rule 15.

If the wife had been sane, it is clear that, under that rule, her bill might have been exhibited by next friend. And whatever effect her insanity might have had, in England, upon her right to exhibit her bill in that mode, we are persuaded it cannot, in this State, have the effect to deprive her of that right. She has no estate, no guardian, no committee. She is afflicted, helpless, and in a lunatic asylum in a sister State, where she was placed by some of her friends, after the cruelty of her husband alleged in her bill. She seeks nothing but *alimony*. Her next friend can do nothing to her prejudice, but is as completely under the direction and control of the chancellor, as a committee appointed by the chancellor would have been.—Bolling v. Turner, 6 Rand. 584 ; Isaacs v. Boyd, 5 Porter, 388 ; Longnecker v. Greenwade, 5 Dana, 516. The chancellor's authority to protect the husband and bind the wife, is as complete when such a bill is exhibited by next friend, as when exhibited by committee. His jurisdiction is not affected by the substitution of either of these modes for the other. Whether it is to be filed in the one mode or the other, is, at most, a mere question of practice ; and although, in England, the practice may be to have such a bill exhibited by committee, and although it may there be "inconvenient to deviate from the regular practice;" yet it is probable that, even there, circumstances may exist which justify a deviation from that practice ; and it is certain that, here, circumstances will justify a deviation from it.—Gillbee v. Gill-

bec, 1 Phillips' Ch. R. 121; Eyre v. Wake, 4 Vesey, 75; Machin v. Salkeld, 2 Dick. 634; Shelford's Law of Lunatics, 445; Rebecca Owing's case, 1 Bland's Ch. R. 290; Colegate D. Owing's estate, 1 Bland's Ch. R. 370; 2 Story's Eq. Jur. §§ 1334, 1336, 1362, 1365, and notes.

The conclusion attained by us is supported by Carr v. Boyce, 13 Ired. Eq. R. 102, where it was held, that a bill may be filed by the next friend, on behalf of a person of weak mind, and the fit subject for a commission of lunacy, his property being too small to bear the expense of a commission.—3 Chitty's Eq. Dig. 2451, § 15.

In Kavanaugh v. Thompson, 16 Ala. R. 817, it was held, that administrators could not complain that a decree, regular in form, was rendered by the orphans' court (a court of limited jurisdiction) against them, in favor of *infant* distributees, without the appointment of guardians *ad litem*, although the failure to appoint them was an error for which the decree could have been reversed at the instance and for the benefit of the infants. So, here, the husband as respondent, after having denied in his answer the insanity of his wife, and treated here as sane in the proceedings in the cause, and gone to trial on pleadings and proof, without moving to take the bill off the file, ought not now to be permitted to reverse the decree against him, on the mere ground that, as she was insane, her bill should have been filed by committee.

[2.] Adultery, committed by the wife when insane, is no bar to her claim for alimony, if that be the only objection to her claim.—Wray v. Wray, 19 Ala. R. 522. The proof convinces us, that the adultery of the wife, shown in this case, was committed by her when insane.

[3.] The cruelty and conduct of the husband, averred in the bill and established by the evidence, entitles the wife to alimony.—Glover v. Glover, 16 Ala. R. 440; Hanberry v. Hanberry, 29 Ala. 719.

We are satisfied there is no error in the decree of the chancellor, and affirm it, at the costs of the appellant.