MARY A. MOHLER v. THE ESTATE OF ANTHONY SHANK, Deceased, JOHN L. SHANK, Administrator and Appellant, and Z. M. P. SHANK, Appellant, v. MARY A. MOHLER, *et al.*

**Divorce of one Insane.** The guardian of one insane can not maintain an action for divorce in behalf of his ward, and a decree upon his application is void. *Douglas v. Douglas*, 31 Iowa, 421, *distinguished. Birdzell v. Birdzell*, 6 Pac. Rep. 561; *Worthey v. Worthey*, 36 Iowa, 45; *Bradford v. Abend*, 89 Ill. 78, and 2 Bishop, Marriage and Divorce, 306a, *followed. Baker v. Baker*, 6 Prob. Dis. 12, *disapproved.*

SAME: ESTOPPEL. A woman who voluntarily receives the benefits of a void decree of divorce, and remarries before the death of her husband, cannot claim a distributive share in his estate, after his death. *Arthur v. Israel*, 25 Pac. Rep. 81; *Ellis v. White*, 61 Iowa, 644; *Prater v. Prater*, 9 S. W. Rep. 361; *Odiorne's Appeal*, 54 Pa. St. 175; *Stephens v. Stephens*, 51 Ind. 542; *Yorston v. Yorston*, 32 N. J. Eq. 495; *Richardson v. Simmons*, 47 Mo. 20; *Baily v. Baily*, 44 Pa. St. 274, and *Bourne v. Simpson*, 9 B. Mon. 454, *followed.* Deemer, J., took no part.

*Appeal from Montgomery District Court.*—HON. H. M. TOWNER, Judge.

FRIDAY, JANUARY 18, 1895.

The first of the above-entitled actions is a proceeding in probate, by which Mary A. Mohler demands that her dower or distributive share be set off to her, as the widow of Anthony Shank, deceased. The other case is a suit in equity by the heirs of Anthony Shank, and against Mary A. Mohler and others, to quiet the title of said heirs against any claims of Mary A. Mohler in the estate of said Shank. Both of said actions were tried by the court. The application for the admeasurement of dower was sustained, and the petition to quiet title

was dismissed. The heirs and the administrator of Anthony Shank, deceased, appeal.—*Reversed.*

*C. E. Richards* and *Smith McPherson* for appellants.

*J. M. Junkin* and *Harl & McCabe* for appellees.

Rothrock, J.—I. The two causes involve the same questions, and they will be disposed of in one opinion. The facts are not the subject of dispute, and are, in substance, as follows: Anthony Shank and Mary A. Temple (now Mohler) were married on the first day of January, 1865, at the city of Red Oak, in Montgomery county. They lived together as husband and wife, in said county, until the year 1873, when said Anthony Shank, upon inquest duly held, was adjudged to be insane, and was placed in the insane hospital at Mt. Pleasant, in this state, where he was under treatment as a patient until the year 1881, when he was removed to Mercy Hospital, at Davenport, where he remained until his death, which occurred in 1892. He was insane from the time he was so adjudged until his death. Soon after his removal to Mt. Pleasant, his wife was appointed his guardian by the Circuit Court of Montgomery county. Afterward, and in 1881, she was, by order of the proper court, removed from said guardianship, and another guardian was appointed. Her removal was ordered on the ground that she mismanaged the property of her ward. A judgment for some two hundred dollars was rendered against her and the sureties on her bond, as money due from her in the matter of said guardianship. In the month of January, 1884, T. H. Alexander, then guardian of said Anthony Shank, commenced a suit for divorce in the Circuit Court of Montgomery county against the said Mary A.

Shank, in behalf of his ward, based upon the ground of adultery. An original notice was duly served upon the defendant in that suit, and she appeared to the action, and filed a demurrer, one ground of which was that the court had no jurisdiction of the subject-matter of the suit, for the reason that the alleged adultery occurred after the plaintiff became insane, and that a guardian could not procure a divorce for an insane person. The demurrer was duly submitted to the Circuit Court, and was overruled. The defendant excepted to the ruling, and elected to stand on her demurrer. A default was entered against her, for want of an answer, and evidence was introduced, and a decree of divorce was entered of record. Before the decree was entered, the parties to that suit made and signed the following agreement: "Anthony Shank, by Guardian, v. Mary A. Shank. Action for Divorce. The parties hereto agree as follows: (1) That if said court, or the Supreme Court, on appeal, shall hold or decree that plaintiff, Anthony Shank, is entitled to a decree of divorce from the bonds of matrimony between the said Anthony Shank and Mary A. Shank, then the plaintiff shall immediately pay to the defendant four hundred dollars, and shall also pay off and discharge the bills of Mohler, Brown & Co., for three hundred and thirty-one dollars, and H. Roberts & Son, for seventy dollars, against said Mary A. Shank, and shall fully release and discharge defendant and her bondsmen by reason of all acts of the defendant; and during the pendency of this action in this court, or the Supreme Court, the said judgment in Circuit Court against defendant and her bondsmen shall bear no interest, and a final decree in this case in favor of plaintiff shall cancel said judgment, of itself. (2) Said payments so made shall be in full of any and all claims, of any and every kind, for alimony, both temporary and permanent, and said decree of

divorce, and the decree for said payments aforesaid, shall be a bar absolute against defendant, barring and estopping defendant from ever claiming any dower or other interest in the property or estate of Anthony Shank, either while he is living, or after his decease, and shall also fully settle all allowances made by this court heretofore to Mary A. Shank or her attorneys, and the same shall be canceled. (3) This case shall be prosecuted with the utmost diligence to a conclusion, and, if said decree of divorce shall be denied, then this agreement shall be void. Witness our hands, January 30, 1884. [Signed] Anthony Shank, by T. H. Alexander, Guardian. Mary A. Shank." The decree of divorce recognized this agreement, and it contained the following provisions in reference to the property rights of the parties: "It is further decreed that the defendant is hereby forever barred and estopped and cut off from having or claiming any right to dower or other estate, or to any part of the property, either real or personal, of the said Anthony Shank, that he now has or may hereafter acquire, or to his said estate or property, or any part thereof, that he may own at the time of his death; that plaintiff has all the rights of an unmarried man. It is further ordered that, as alimony, both temporary and permanent, in full therefor, that plaintiff pay in cash to defendant four hundred dollars; that plaintiff pay a bill contracted by defendant with Mohler, Brown & Co., of three hundred and thirty-three dollars, and a like bill, of seventy dollars, to H. Roberts & Son, and that a judgment of two hundred and eleven dollars, rendered by this court at late January, 1884, term, in a case wherein T. H. Alexander, guardian of Anthony Shank, was plaintiff, and Mary A. Shank, E. Temple, William Painter and William Archer were defendants, be, and the same is hereby satisfied in full,

and canceled, and all other claims of defendant for support are hereby barred; and that execution issue therefor." The amounts provided for in the agreement and decree were promptly paid to the defendant, and the judgment satisfied in full, so that the defendant was allowed and received something more than one thousand dollars. There is no claim made that there was not sufficient cause for a divorce. On the contrary, it is conceded that Mrs. Shank (now Mrs. Mohler) was delivered of a bastard child on the seventh day of August, 1881, more than two years before the action for divorce was commenced; and on the twenty-second day of July, 1884, a marriage license was duly issued to Mary A. Shank and J. L. Mohler, and they were married on the same day. ´ Mrs. Shank-Mohler testified as a witness, in part, as follows: "There were no children born to Anthony Shank and me. There was a child born August 7, 1881. That child was not Anthony Shank's child. This child that I have just spoken of was the child of my present husband, J. L. Mohler."

II.   The appellee founds her claim to a distributive share of the estate upon the ground that when Anthony Shank died she was his lawful widow. In other words, the contention in her behalf is that the decree of divorce is absolutely void, because the Circuit Court had no jurisdiction to entertain the divorce proceeding and enter a decree; the husband in whose behalf the jurisdiction of the court was invoked being at the time insane, and his guardian having no lawful power or authority to commence or maintain the action for divorce. It is conceded that the suit was commenced in the proper county, that service of the original notice was duly had, and that the defendant therein appeared. No question is made as to the form of the decree, and as to the reasonableness of the amount of alimony allowed the defendant; and, although the

defendant entered into marital relations with Mohler
long before the death of Shank, she insists that
she is the widow of Shank. She does not attack the
decree directly, and demand that it be set aside and
vacated; but she insists that it is void, and should be
disregarded by the court, because no right can be predi-
cated thereon by the lawful heirs of Shank. The heirs
of Shank maintain that the decree is not void, that there
was no defect as to the party plaintiff, and that the
guardian had the legal right to maintain the action for
divorce. The statutes of this state on the subject of
divorce and guardianship are referred to in argument
as sustaining this view. It is unnecessary to cite the
sections of the Code relied upon by counsel. They con-
tain no such authority, neither expressly nor by impli-
cation. On the contrary, we think that they plainly
imply that such a proceeding is not authorized. Sec-
tion 2222 of the Code requires that the petition for
divorce "must be verified by the oath of the plaintiff."
It is true that this requirement is not jurisdictional.
See *McCraney v. McCraney*, 5 Iowa, 232; *Ellis v. White*,
61 Iowa, 644, 17 N. W. Rep. 28. But the fact that the
statute requires the oath of the plaintiff, and provides
for no substituted verification, as in other cases, tends
strongly to show that the legislative intent was that an
action for divorce should be prosecuted by the injured
party, in his or her personal capacity. Other features
of the statute are called to our attention, which, it is
urged, indicate the legislative intent that the guardian
of an insane person may maintain an action for divorce.
We do not regard it as necessary to discuss that line of
argument. We think that the want of such authority
is so apparent as to leave no reasonable ground for
debate. It was held in *Douglas v. Douglas*, 31 Iowa,
421, that, where a husband willfully deserted his wife

while he was sane, she was entitled to a divorce, not-
withstanding he became insane during the statutory
period of two years.    And in *Wertz v. Wertz*, 43 Iowa,
537, it was held that insanity occurring after marriage
does not constitute ground for divorce.    These cases do
not control the question now under consideration.    It
is true that in the *Douglas Case* a divorce was allowed
against a party who was insane when the decree was
entered.    But the cause for divorce had its inception
while the party was sane.    It may further be said that
the question whether the action may be maintained
where the defendant is insane involves materially dif-
ferent considerations than in a case where the person
in whose behalf the action is sought to be maintained
is a guardian of an insane person.    The marriage con-
tract, by which two persons assume the relation of hus-
band and wife for their joint lives, is a personal status
or condition entered into by the parties alone.    No
guardian or parent or next friend can, by any means
known to the law, effectuate a marriage between his
ward or child and another.    The relation depends upon
the free and voluntary consent, and the active and
affirmative will, of the parties.    And it appears to us
that a guardian of an insane person has no more right
to maintain an action to dissolve the marriage relation
of his ward than he has to manage and control his will
in the matter of entering into the relation.    The wrongs
which may be committed by a husband or wife are not,
of themselves, sufficient to dissolve the bonds of matri-
mony.    The injured party, if insane, may, upon recover-
ing his or her reason, condone the wrong, or continue
the marriage relation notwithstanding the delinquen-
cies of the other party.    If Anthony Shank had recov-
ered his reason, and, upon returning to his home, found
that his wife had committed adultery, and was the
mother of an illegitimate child, it would have been his

right to condone the wrong, or put her away by an
action for divorce. In the absence of some statutory
authority, no other person could exercise that right for
him. As he was insane, and never restored to sanity,
the Circuit Court had no jurisdiction to entertain an
action for divorce, commenced in his behalf by his guar-
dian. *Birdzell v. Birdzell,* 33 Kan. 433, 6 Pac. Rep.
561; *Worthy v. Worthy,* 36 Ga. 45; *Bradford v. Aben,* 89
Ill. 78; 2 Bish. Mar. & Div., section 306a. Counsel for
appellants, so far as the question of jurisdiction
depends on authority, rely mainly on the case of *Baker
v. Baker,* 6 Prob. Div. 12. It is to be conceded that the
English law of divorce is much like our own statute,
and that in the cited case it was held that a guardian
of an insane person might maintain an action for
divorce in behalf of his ward. We have given the case
a careful examination, and have to say that we cannot
bring ourselves to approve the rule therein announced.

II. We come now to a consideration of the ques-
tion as to the effect or force of the decree for divorce,
under the admitted facts of the case. We have found
that the decree was void. It has often been said that a
void judgment is no judgment; that it may be attacked
directly or collaterally. Freeman, in work on Judg-
ments, uses this language: "A void judgment is, in
legal effect, no judgment. By it no rights are divested.
From it no rights can be obtained. Being worthless
in itself, all proceedings founded upon it are equally
worthless. It neither binds nor bars any one. All
acts performed under it, and all claims flowing
out of it, are void." This is true, in a general
sense; yet, notwithstanding, a party to such a
judgment may voluntarily perform it, by paying the
amount adjudged against him, and, when paid, no
inquiry will be made as to the validity of the judg-
ment; or he may perform the acts required by a void

decree, or accept its benefits, and thereby estop himself from questioning the decree. In other words, a party to a void judgment or decree may be estopped from attacking it either directly or indirectly. Suppose a judgment is for a money demand, justly due, and the record shows that it was rendered without having jurisdiction of the person of the defendant by the service of process upon him, and he voluntarily satisfies the judgment. That is an end of the controversy. In the case of *Arthur v. Israel,* 15 Colo. 147, 25 Pac. Rep. 81, the wife, without cause, deserted her husband and home, and lived for years in adultery, and afterwards learned that a divorce had been procured by her husband; and she caused a marriage ceremony to be performed with her paramour, and continually lived and cohabited with him until the death of her husband. It was held that she could not take advantage of the fact that the decree of divorce was void, for want of service of process, and successfully assert against the heirs her right under the statute to the estate of the deceased husband, as his widow. The case at bar presents more cogent reasons for the application of the doctrine of estoppel. In this case the wife was not ignorant of the application for divorce, when it was made. She was made a party, and appeared in the action; and after the decree was entered she accepted the alimony which she agreed to receive, and procured a license, and married her paramour, long before the death of Anthony Shank. She accepted all the benefits of the decree, without reserve, and recognized its validity by contracting and consummating a marriage with Mohler. There could have been no more complete acceptance of the benefits of the decree. In the cited case, the court said: "We discover, upon principle, no sufficient reason why petitioner's conduct in the premises should not produce just as effective an estoppel as

if she had received the proceeds of a void judgment for money. By her subsequent marriage with Israel during Arthur's lifetime, she accepted, so far as was within her power, the benefits or privileges of the divorce decreed. The fact that she did not then know that those decrees were void is a matter of no more consequence than is the ignorance, in this respect, of one who, knowingly in all other particulars, receives the fruits of an ordinary void judgment at law. That at the time of her marriage with Israel she understood the decrees to be valid is, if true, only an additional earnest of her acquiescence in the result, and sincerity in accepting and taking advantage of the benefits supposed to follow. Besides, had she believed them void, her obliquity would be even deeper than it is; because to her other alleged offenses would be added that of intentional fraud upon Israel, who may have thought that he was contracting a valid marriage." In *Ellis v. White*, 61 Iowa, 644, 17 N. W. Rep. 28, where plaintiff procured a divorce and alimony upon petition which she afterwards claimed did not give the court jurisdiction, it was held that, whether the court had or had not jurisdiction, she, having accepted the benefits of the decree, could not be heard to question the jurisdiction of the court to render it. The same principle is announced in *Prater v. Prater*, 87 Tenn. 78, 9 S. W. Rep. 361, and in Odiorne's Appeal, 54 Pa. St. 175. And a like rule is to be found in the cases of *Stephens v. Stephens*, 51 Ind. 542; *Yorston v. Yorston*, 32 N. J. Eq. 495; *Richeson v. Simmons*, 47 Mo. 20; *Baily v. Baily*, 44 Pa. St. 274; *Bourne v. Simpson*, 9 B. Mon. 454. This exception to the doctrine that a judgment or decree entered without jurisdiction is absolutely void is founded upon the plainest principles of justice. As applied to the case at bar, it is but the enforcement of the legal maxim that the law will not permit a person to take advantage of his own wrong.

We can discover no reason why Mrs. Mohler should be allowed to masquerade in a court of justice as the widow of Anthony Shank, and at the same time claim that she was the wife of Mohler for about eight years before Shank died. Both the law and good morals forbid it. Having accepted the divorce as valid, in the way she did, she should be held to be estopped from maintaining any claim to any part of the estate of her former husband. The conclusion we have reached in this case on the question of estoppel is not directly supported by decisions of this court, but it appears to us that it is in harmony with modern legislation upon the relation of husband and wife. See chapter 2, tit. 15, of the Code. The rights of a wife in her property, and her capacity to contract with reference thereto, are plainly conferred upon her. Section 2213 is as follows: "Contracts may be made by a wife, and liabilities incurred, and the same enforced by or against her to the same extent and in the same manner as if she were unmarried." She cannot enter into a contract to divorce herself from her husband. But we discover no reason why the law of estoppel may not be applied to her acts in a case like this. The decree in the suit in equity, and the order sustaining the claim for a distributive share in the estate, are *reversed*.

Deemer, J., took no part in the decision of this case.