# MAY 1923.

## Luther Wilemon v. Cora Wilemon.

### No. 3587. Decided May 9, 1923.

### (250 S. W., 1010.)

**1.—Divorce—Insanity.**

The District Court of the county of plaintiff's residence had jurisdiction and power to render a degree of divorce in favor of a husband against a wife then insane and confined in the asylum, on the ground of adultery committed by her before she became insane, and not condoned by him. (pp. 591-593).

**2.—Same—Statute—Construction.**

Article 4632, Revised Statutes, as amended by the Act of April 1, 1913 (Laws, 33d Leg., ch. 97, p. 183), did not prohibit all divorce where one of the parties was insane. The proviso that the Act should not apply to such case ·(insanity) was not intended to affect divorce for grounds provided for in articles based on the Act of 1876. The legislative history of its enactment, here considered, and of the amendments by which the proviso as to insanity was introduced show that such proviso was intended to apply only to the new ground for divorce introduced by the Act, that is the case where they have lived apart for ten years. (pp. 590, 591).

Question certified from the Court of Civil Appeals for the Fifth District, in an appeal from Ellis County.

The Supreme Court referred the question to the Commission of Appeals, Section B, for its opinion thereon, and this, being approved, is adopted by the Supreme Court as its answer to the question.

*J. L. Gammon* and *G. C. Groce,* for appellant.

Plaintiff's right to prosecute his suit for divorce on account of a cause of action which accrued before the defendant became insane, and which has not been condoned, is unquestioned, at common law— and by overwhelming authority in the States of this Union. Harrigan v. Harrigan, 135 Cal., 397, 67 Pac., 506; 87 Am. St., 118; Newcomb v. Newcomb, 13 Bush (Ky.), 544, 26 Am. Rep., 222; Garnett v. Garnett, 114 Mass., 379, 19 Am. Rep., 369; Matchin v. Matchin, 6 Pa. St., 332, 47 Am. Dec., 466; Fisher v. Fisher, 54 W. Va., 146, 46 S. E., 118; Franklin v. Franklin, 53 Kans., 143, 35 Pac., 115; Rathbun v. Rathbun, 40 How. Pr., 328; Stratford v. Stratford, 92 N. C., 297; Wray v. Wray, 19 Ala., 522; Broadstreet v. Broadstreet, 7 Mass., 474; Scheick v. Scheick, 5 Neb., 142, 97 N. W., 474; Kretz v. Kretz,

73 N. J. Eq., 246; Hill v. Hill, 27 N. J. Eq., 214; Horn v. Horn, 142 App. Div., 848, 127 N. Y. Supp., 448; Nichols v. Nichols, 31 Vt., 328, 73 Am. Dec., 352; Ruling Case Law Vol. 9, page 375, P. 166; Corpus Juris Vol. 19, page 76, Sec. 169; Speer, Marital Rights, Sec. 530, page 680; Am. Law Reports, Extended note Vol. 4, page 1334; Notes 82 Am. Dec., 200; Notes 130 A. S. R., 853; Notes 34 L. R. A., 166; Notes 19 Am. Rep., 371.

The Venue Act of May 27, 1873 as amended by the Act of 1913, page 183 does not inhibit the granting of a divorce under the Act of 1876.

The legislative intent constitutes the law, and in order to determine this contemporaneous history, the evil to be remedied and the progress of the legislation in all of its stages may be properly looked to and considered. State v. Connor, 86 Texas, 133; Red River Natl. Bank v. Ferguson, 109 Texas, 287, 192 S. W., 1088; Black on Interpretation of Laws, 224; United States v. Railway Co., 91 U. S., 72; Aldridge v. Williams, 3 How., 9.

*Farrar & Kemble,* for appellee.

We construe the statute to mean an absolute prohibition against the granting of a divorce ·in any case where either party is insane, it matters not upon what ground it is sought. Daugherty v. Daugherty, 193 S. W., 985.

MR. JUDGE HAMILTON delivered the opinion of the Commission of Appeals, Section B.

This case calls for the answer to a question certified to our Supreme Court, by the Court of Civil Appeals for the Fifth Supreme Judicial District as follows:

"The appellant sued the appellee in the District Court of Ellis County, Texas, for divorce- and custody of their children. The appellee being insane, the court appointed O. K. Farrar and Y. D. Kemble, practicing attorneys of the Ellis County bar, guardians ad litem to represent her in the suit. The case was tried by the court without the aid of a jury and judgment was rendered in favor of the appellee. From this judgment the appellant perfected an appeal to this court.

"The material facts alleged and proved by the appellant, are as follows: At the date of the trial of the case in the District Court the appellee, Cora Wilemon, was insane and confined in the Lunatic Asylum at Terrell, Texas, under·a regular adjudication of lunacy had in the County Court of Ellis County, Texas, on March 11th, 1912. The plaintiff and defendant are and have been bona fide residents of Ellis County, Texas, for more than twenty years next preceding the filing of said suit; they were lawfully married in Ellis County,

Texas, on to-wit, December 2, 1902, and lived together as husband and wife until about the 20th of December, 1909. On the last mentioned date the defendant abandoned plaintiff in accordance with an agreement previously made with one Sam Gamble, and went to Mc-Cullough County, Texas, to live with him as his wife with the intention of permanently abandoning the plaintiff; that she left without the knowledge of plaintiff and that she, in accordance with said agreement, lived with and cohabited with the said Gamble until sometime in January, 1910, when by reason of a disagreement or quarrel with said Sam Gamble she communicated with her mother and asked and obtained permission to return to her parental home, which she did in January, 1910; that the plaintiff attempted to learn both from the defendant, Cora Wilemon, and from outside sources the facts concerning her leaving and sojourn away from home, but he was unable to do so and did not learn said facts until the early part of February in 1912. That after return of defendant, Cora Wilemon, she and plaintiff lived together in the same house, but did not cohabit together as husband and wife; that the defendant, Cora Wilemon, in the latter part of 1908 became infatuated with one Sam Gamble, who, at that time was employed by plaintiff in the conduct of his farm operations at his home of which he, the said Sam Gamble, was an inmate, and that the said defendant and the said Sam Gamble during the latter part of 1908 habitually cohabited together without plaintiff's knowledge and without suspicion on his part as to their relation; that during the said fall of 1908 that the plaintiff was engaged in the operation of his gin plant at the city of Maypearl about three miles distant from his home; that he left home early and returned late, and that the said Gamble was in charge of the farm operations at his home place; that the said Gamble left Ellis County some time in 1909 and that the said defendant continued her relation with him through correspondence and thereby arranged a meeting with him at Bethel in Ellis County in the summer of 1909; that said relationship by correspondence continued up to the time said defendant went to live with the said Gamble and as well as after her return to her parental home by interchange of letters; that the plaintiff did not know until February, in 1912, of such communications or of such relationship; which he learned through confession of defendant at that time; that the plaintiff continued to remain in his home with his children under the care of his mother, and continued to contribute to the support of said defendant after her return to their home and on the occasion of her becoming ill in the fall of 1910 on the occasion of her first visit to their children at his home he cared for her and gave her medical attention and assisted her and attempted to restore her health; that in the summer of 1911 her condition grew worse; that she constantly brooded over the disgrace

which she had brought over her parental home and became nervous and at times morose; that in the fall of 1911 or the early part of 1912 she became physically weak and more nervous and finally collapsed resulting in the loss of reason. In February, 1912, on the initiative of her parents, without any motion of plaintiff, she was adjudged of unsound mind and confined to the Terrell Lunatic Asylum where she has continuously remained since; that she is at present a confirmed lunatic; that her mind is almost absolutely gone, and that she is broken in health and incurable. That she was of sound mind during the year of 1908 and particularly 1909, upon the date of her abandonment of plaintiff and of the occurrences consequent thereto. That the defendant never at any time expressed a desire for reconciliation with the plaintiff, but though he sought to discuss their domestic matters with her she always expressed an antipathy for plaintiff and affirmed determination that they should not again live together as husband and wife, and upon the last of such interviews fully disclosed to him and related all of the facts of her paramour with the said Gamble for the purpose expressed by her that he might not again approach her upon the subject; that plaintiff faithfully at all times has performed his marital vows and given to the defendant his entire marital devotion; that plaintiff and defendant have three children, viz: Ruby, a girl fifteen, Rena, a girl aged 13, and Perry, a boy aged ten; that plaintiff had had the custody of them since the separation in 1909 and is the proper person to care for and nurture them, and is able and willing to do so. That the defendant, Cora Wilemon, has a guardian of her estate in the person of her brother, S. E. Dawson.

"The trial court concluded as a matter of law: 'That under the decision of the Court of Civil Appeals in the case of Dougherty v. Dougherty, 198 S. W., 985, this court is without jurisdiction and is absolutely prohibited to grant a decree of divorce where any party to the cause is insane; that the court is without jurisdiction to grant divorce in the case by reason of the statutes of Texas, Art. 4632.'

"It is assigned that the court erred in holding that under Article 4632 of the Revised Statutes he was without jurisdiction to render a decree of divorce in this cause because of the present insanity of the defendant, and in entering judgment denying plaintiff's prayer therefor, because, said article, and specially the clause invoked, is not applicable to this cause, which arises wholly under an independent Act of the Legislature, viz: Article 4631 of said Revised Statutes.'

"The following propositions are advanced under the assignment: 1. 'Plaintiff's right to prosecute his suit for divorce on account of a cause of action which accrued before the defendant became insane, and which has not been condoned, is unquestioned, at common law

and by overwhelming authority in the states of this Union.' 2. 'The venue act of May 27, 1873, as amended by the act of 1913, page 183, does not inhibit the granting of a divorce under the act of 1876.'

"The case is one of which the jurisdiction of the Court of Civil Appeals is final, and since we are doubtful as to how the issue of law arising on the appeal should be decided, we deem it advisable to certify the question set out below to the Honorable Supreme Court of Texas for adjudication.

"Question: The appellee, Cora Wilemon, being insane at the date of the trial and the ground alleged and proved by the uncontradicted evidence for the divorce being adultery committed by her before she became insane, which has never been condoned by the appellant, did the trial court err in holding that under Article 4632 of the Revised Statutes he was without jurisdiction or power to render a decree of divorce?"

Article 4631 Revised Civil Statutes of Texas, 1911 provides that a divorce may be granted "in favor of the husband, where his wife shall have been taken in adultery * * * * * * ."

Article 4632 of the same statutes, until amended in 1913, read:

"No suit for divorce from the bonds of matrimony shall be maintained in the courts, unless the petitioner for such divorce shall, at the time of exhibiting his or her petition, be an actual bona fide inhabitant of the state, and shall have resided in the county where the suit is filed six months next preceding the filing of the suit."

By the Act of 1913, article 4632 was amended to read:

"No suit for divorce from the bonds of matrimony shall be maintained in the courts of this State unless the petitioner for such divorce shall at the time of exhibiting his or her petition, be an actual bona fide inhabitant of the State for a period of twelve months, and shall have resided in the county where the suit is filed six months next preceding the filing of the suit; provided, that such suit shall not be heard or divorce granted before the expiration of thirty days after the same is filed; and provided, further, that neither party to a divorce suit, wherein a divorce is granted upon the ground of cruel treatment shall marry any other person for a period of twelve months next after such divorce is granted, but the parties so divorced may marry each other at any time upon obtaining a license as provided in Article 4610; provided that where a man marries the woman whom he seduces to escape penalties of the law punishing for seduction, the man shall not be entitled to a divorce for any cause within three years after such marriage, provided that this Act shall not apply to any case where either the husband or wife is insane.

"Provided further that in addition to the grounds for divorce now provided by Statute, that where any husband and wife have lived apart without co-habitation for as long as ten years, the same shall be sufficient grounds for divorce."

That Act was original H. B. No. 44. When it reached the Senate, among amendments there proposed, was the following by Senator Lattimore: "Amend the bill by adding at the end of said bill the following: 'Provided further that in addition to the grounds for divorce now provided by statute, that when any husband and wife shall have lived apart without cohabitation for as long as ten years, the same shall be sufficient ground for divorce.' " Senate Journal, Thirty-third Legislature, 1913, p. 1441. Immediately thereafter Senator Nugent offered the following amendment to the amendment: "Amend the amendment by striking out the words 'ten years' and substituting in lieu thereof 'five years; provided that this Act shall not apply to any case where the husband or wife is insane.' " This amendment to the amendment was lost. Id. The amendment by Senator Lattimore, supra, was then lost. Senate Journal, Regular Session, 1913, p. 1442. A motion to reconsider the vote by which the amendment by Senator Lattimore was lost was adopted. Id. Among other amendments then offered Senator Nugent renewed his amendment modified to read as follows: "Amend the bill, p. 2, line 3, by changing the period to a comma and adding the following: 'Provided that this Act shall not apply to any case where either the husband or wife is insane.' " This amendment was adopted and the bill was finally passed by the Senate in that form. Id. 1443. The House concurred in the Senate amendments. Id. 1493.

We think the Nugent amendment, supra, had reference only to the provisions of the Lattimore amendment, supra. In the first instance it was offered as an amendment to the Lattimore amendment. When the Lattimore amendment was offered a second time it was followed by the Nugent amendment. To say that that "Act" as a whole "shall not apply to any case where either the husband or wife is insane" would not be to deny a divorce in such cases but would have the effect of stripping the proceedings in such cases of all the limitations, restrictions and safe-guarding provisions contained in article 4632, and to leave the procedure in such cases to the direction of the statutes governing procedure in other civil suits. As said in Speer's Law of Marital Rights in Texas, sec. 530: "If the act does not apply to any case of divorce where either the husband or wife is insane. there is no statute, other than the general venue statute, fixing venue; such case may be heard before the expiration of thirty days; either party thereto may remarry another immediately, even in a cruelty case; the seducer may have a divorce at any time, for cause; and ten years living apart, without cohabitation, is, as to such parties, no ground for divorce,—for these are the matters included in the 'act.' " We do not think the Legislature intended such results.

By no possible construction can article 4632 be made to deny the granting of divorces in all cases where one of the parties is insane.

It denies the right to divorce in such cases only when sought on the ground that the parties "have lived apart without cohabitation for as long as ten years."

By the laws of Texas, marriage is a civil contract. Edelstein v. Brown, 80 S. W., 1027; Simon v. State, 31 Texas Crim., 186; Honey v. Clark, 37 Texas, 686; Rice v. Rice, 31 Texas, 174. The statutes prescribe the grounds upon which that contract may be dissolved. As shown above, one of the grounds for such dissolution afforded the husband by the statute is that "his wife shall have been taken in adultery." When she shall have been so taken while sane, is the husband's right of divorce taken away or destroyed during her subsequent insanity? Our criminal statutes prescribe that no person who becomes insane after he committed an offense shall be tried for the same while in such condition and that no person who becomes insane after he is gound guilty shall be punished for the offense while in such condition. Art. 39 Penal Code, 1911. But insanity of a defendant is not available as a defense in any civil cause growing out of his act of omission or commission previous to his insanity. Art. 1942, R. S. 1911, provides for the appointment of a guardian ad litem for such a person defendant and the plaintiff may then proceed against him. There seems to be no good reason why the same rule should not apply to a plaintiff in a suit for divorce where the cause of action accrued before the defendant became insane. It may be true that the insane defendant is in no condition to defend himself and that some defense known only to himself if sane might be presented in his behalf. But this might be true in a civil suit of any other character. That argument applies with equal force to all suits against insane defendants.

That an action for divorce may be maintained against an insane defendant represented by guardian ad litem where the acts constituting the ground for divorce were committed by such defendant prior to his becoming insane is sustained by the highest authority. Bishop on Marriage, Divorce and Separation, vol. 2, sec. 518, says:

"In principle,—divorce being a civil proceeding, and it being established practice in the civil department of our law to maintain suits against insane parties the same as against sane ones, there can be no just ground for excepting divorce causes. Both in reason and in authority, insanity may excuse an act otherwise unlawful, but where it does not it is no defence against the injured person's claim for redress. To deny the law's justice to the sane one because of the other's insanity would be to cast in part on the former the burden which God had laid wholly on the latter. Divorce, where there is cause for it, is the plaintiff's right. If the defendant were sane, he could not prevent it; he has no election. Therefore it is not otherwise when he is insane."

To the same effect are Mansfield v. Mansfield, 13 Mass., 412; Garnett v. Garnett, 114 Mass., 379; Kerlick v. Kerlick, 30 Oh. Cir. Ct., 274; Douglass v. Douglass, 31 Iowa, 421; Harrigan v. Harrigan, 135 Cal., 397; Stratford v. Stratford, 92 N. C., 297; Rathbun v. Rathbun, (N. Y.), 40 How. Pr., 328; Lewis v. Lewis, (Okl.) 158 Pac., 368; Huston v. Huston, 150 Ky., 353.

We recommend that the question be answered in the affirmative.

### BY THE SUPREME COURT.

The opinion of the Commission of Appeals answering certified questions adopted and ordered certified to the Court of Civil Appeals.