### DILLION v. DILLION. (No. 2499.)

(Court of Civil Appeals of Texas. Amarillo. May 20, 1925. Rehearing Denied June 17, 1925.)

1. **Divorce ⬅71—Insane wife cannot sue for divorce either in her own name or by next friend.**

Neither under Vernon's Ann. Civ. St. Supp. 1922, art. 4632, nor Vernon's Sayles' Ann. Civ. St. 1914, arts. 2167–2171, can an insane wife, either in her own name, or by next friend, maintain an action for divorce, Vernon's Sayles' Ann. Civ. St. 1914, art. 1942, having no application where the plaintiff is insane.

2. **Courts ⬅120—District court without jurisdiction where exactly $500 involved, exclusive of interest.**

Under Const. art. 5, §§ 8, 16, district court has no jurisdiction where matter in controversy is of exact value of $500, exclusive of interest.

3. **Husband and wife ⬅272(4)—Action by wife to partition community property properly dismissed, where no waste or fraud on part of husband alleged.**

Suit by insane wife by next friend against husband for partition of community property was properly dismissed, where it was not alleged that husband wasted the community property,

or threatened to do so, and no fraud in relation to his actions concerning it was set out.

Appeal from District Court, Montague County; Paul Donald, Judge.

Suit by Mrs. L. M. Dillion, by J. B. Giles, next friend, against Mount Dillion. Judgment of dismissal, and plaintiff appeals. Affirmed.

Homer B. Latham, of Bowie, for appellant.

Culp, Culp & Culp, of Gainesville, for appellee.

HALL, C. J. Appellant, Mrs. Dillion, filed this suit in the district court of Montague county against her husband, Mount Dillion, praying for a divorce, for a judgment for borrowed money, for the partition of the community estate, and also for attorney's fees and alimony pending the suit. Defendant filed a plea in abatement, alleging that Mrs. Dillion was insane, and therefore incompetent to maintain and prosecute the suit. Upon a hearing the court found that appellant was non compos mentis, and could not, for that reason, prosecute the suit, whereupon, on motion of appellant's counsel, the court entered an order authorizing appellant to prosecute the suit by J. B. Giles as next friend. The court thereupon announced that he would hear the case upon amended pleading at the succeeding term of the court. At the next term appellee filed an amended plea in abatement, alleging the insanity and incompetency of Mrs. Dillion to maintain the suit either in her own name or by next friend. The plea was sustained, and the case was dismissed. This appeal is prosecuted from that judgment.

[1] The first contention is that, though a wife is insane, she may, through another as next friend, institute a suit for divorce, and that it is error for the court to dismiss the action because of her insanity. On the other hand, it is contended by appellee that the right to sue for divorce is strictly personal to the plaintiff, and it being a matter volitional with the plaintiff whether such an action shall be begun and prosecuted, the suit cannot be instituted by a next friend or guardian, because a plaintiff who is non compos mentis is incapable of exercising the discretion which necessarily must be the basis of such a proceeding. V. S. C. S. Supp. 1922, art. 4632, prescribes the conditions and prerequisites upon which a suit for divorce may be maintained, and, amongst others, provides: "That this act shall not apply to any case where either the husband or wife is insane." This proviso, with others, was added to the original act of May 27, 1873, by the act of 1913, which in turn, was again amended and is found in the acts of 1921, Thirty-Seventh Legislature, c. 82, §

1. The last act contains provisions not shown in the first amendment to the original act, and are not necessary to be considered in this opinion. In the case of Skeen v. Skeen (Tex. Civ. App.) 190 S. W. 1118, Chief Justice Rainey, construing the language above quoted from V. S. C. S. 1914, held that it prohibited the granting of a divorce when either spouse· is insane, and further held that where insanity of one of the spouses exists, a next friend could not intervene during the pendency of the insane spouse's suit for divorce and prosecute it to final judgment. The same court, again speaking through Judge Rainey, in Daugherty v. Daugherty, 198 S. W. 985, held that a wife could not maintain a suit where the facts showed that the husband was insane while the parties lived separate and apart, and was hopelessly insane at the time of the trial, and this without regard to the ground upon which the divorce was sought. This writer,' in a dissenting opinion in McNabb v. McNabb (Tex. Civ. App.) 250 S. W. 434, believing that the article of·the statute said what it meant and meant what it said, quoted with approval the holding in the Daugherty Case. Later, in Wilemon v. Wilemon, 112 Tex. 586, 250 S. W. 1010, the act above quoted was discussed at length by Hamilton, Justice, and it was there held that, "by no possible construction can article 4632 be made to deny the granting of divorce in all cases where one of the parties is insane. It denies the right to divorce in such cases only when sought on the ground that the parties 'have lived apart without cohabitation for as long as ten years;'" and further held that an action for divorce could be maintained against an insane defendant, represented by a guardian ad' litem, where the acts constituting the ground for divorce were committed by the defendant prior to his becoming insane. Since this pronouncement ·by the Commission of Appeals, Baugh, Justice of the Austin Court of Civil Appeals, in Jordan v. Jordan, 257 S. W. 569, construed the holding in the Wilemon Case as overruling the Daugherty Case. In the Jordan Case it appears that the parties were married in September, 1913; that the wife permanently abandoned her husband, without .fault' on his part, in April, 1915. In September, 1918, she was adjudged to be insane, and was insane when the suit was filed, when citation was issued and served, ,and when the cause was tried in January, 1923. The judgment of the trial court refusing the husband in that case a divorce was reversed and rendereɑ by Judge Baugh upon the authority of the Wilemon Case, which he construes as overruling the Daugherty Case. In the Daugherty, Wilemon, and Jordan Cases, the defendants were insane. In the Skeen ·Case, the insane wife was the plaintiff, but we are not at liberty to. follow the holding there, because the decision is rested upon the above quoted statutory provision.· As in the Skeen Case, the plaintiff in the instant case is the insane party. Since the Wilemon Case limits the operation of the statutory provision with reference to insanity, to cases where there has been abandonment for ten years, it is clearly not authoritative in the instant case. While it is there held that in virtue of the express provision of V. S. C. S. art. 1942, the court could appoint a guardian ad litem to represent an insane defendant, that article has no application to suits where the plaintiff is insane. V. S. C. S. art. 2167, provides that lunatics having no legally appointed guardian may sue by next friend, and the article has been construed to authorize such suits to annul the marriage of a plaintiff, contracted while non compos mentis. Schneider v. Rabb (Tex. Civ. App.) 100 S. W. 163. The holding in that case is predicated upon the ground that such a person is not mentally capable of comprehending and understanding the nature of the marriage contract, and the reciprocal duties and obligations of· the relation resulting therefrom. Such a marriage is of course void ab initio, because of the mental incapacity of the party to contract it. That decision is, therefore, not authority in a suit for divorce where the marriage relation was entered into while the plaintiff was sane. It will be seén, from the foregoing discussion, that there is no case in Texas and no statute expressly authorizing the prosecution of a suit such as the one under consideration, and the question is whether Giles can maintain the action by implication, under article 2167. Consideration of articles 2168, 2169, 2170, and 2171, which compose title 37, c. 22, V. S. C. S., authorizing suits by next friend, render it doubtful whether the Legislature intended that the chapter should ever be applied to suits for divorce. We incline to the opinion that it does ·not. If we are correct in this, then, in order to dispose of the issue, we must answer the inquiry, what is ·the common-law rule as established by the weight of authority? In 9 R. C. L. 406, §„204, it is said:

"There is authority, especially in England, for the position that a suit for a divorce may be brought or continued by the guardian or committee of an insane spouse, on his or her behalf. But under a statute so authorizing it ·has been held that where the complaining spouse becomes sane after a decree nisi for divorce, an absolute decree would not be entered, as of course, on the motion of the guardian, but that such motion would be held for further hearing as to the procedure dictated by public policy and the best interest of the parties. And according to the prevailing view, in this country, a suit for divorce is regarded as so strictly personal and volitional that it cannot be maintained at the pleasure of a guardian or committee of an insane spouse, even

though the result is to render the marriage indissoluble by or on behalf of the insane party. The basis of this theory is, that there are no marital offénces which, of themselves, work a dissolution of the marital relation, or which may not be condoned, and hence, that · such relation can be dissolved only, with the consent of the injured spouse, which consent cannot be given where he or she is insane."

19 C. J. 98, section 230, declares the rule in this language:

"Unless authorized by statute, divorce suit cannot be prosecuted in behalf of an insane plaintiff by his legal representative."

Reference to the cases cited in the note in support of the text shows that several Massachusetts cases (Sims v. Sims, 121 N. C. 297, 28 S. E. 407, 40 L. R. A. 737, 61 Am. St. Rep. 665, Thayer v. Thayer, 9 R. I. 377), and four English cases, which hold that the legal representative may institute and maintain such a suit in behalf of an insane plaintiff, base the'holding upon statutes expressly granting such power.

The cases cited as holding to the contrary are decided in states where no such express statutory authority is given. See Worthy v. Worthy, 36 Ga. 45, 91 Am. Dec. 758; Iago v. Iago, 168 Ill. 339, 48 N. E. 30, 39 L. R. A. 115, 61 Am. St. Rep. 120; Bradford v. Abend, 89 Ill. 78, 31 Am. Rep. 67; Mohler v. Shank, 93 Iowa, 273, 61 N. W. 981, 34 L. R. A. 161, 57 Am. St. Rep. 274; Birdzell v. Birdzell, 33 Kan. 433, 6 P. 561, 52 Am. Rep. 539; Id., 35 Kan. 638, 11 P. 907; Mims v. Mims, 33 Ala. 98. Skeen v. Skeen (Tex. Civ. App.) 190 S. W. 1118, is also cited in this note, but, as heretofore shown, the holding is based upon a misconception of the effect of article 4632, V. S. C. S. A reference to the cases themselves shows that, without dissent, they support the text. In 2 Bishop on Marriage and Divorce, § 306a, the author says:

"We have seen that according to the late English dicta an insane person cannot maintain a suit to dissolve his marriage. This proposition is sustained by reasons which do not apply to the case of an insane defendant. It is a familiar doctrine that, though the law favors marriage, no one is compelled into matrimony by the law. The marital status can be assumed only of free choice, so that, however much a marriage may be for the advantage of an insane person, he is not capable of entering into it by himself, by guardian or by next friend. Much more as the law looks on divorce with disfavor, will it refuse a dissolution of the marriage to a party who does not consent to it. Consequently, the Georgia court held that an action for a divorce a vinculo cannot be maintained by prochein ami in the name of a lunatic wife. The right to bring the suit is strictly personal and under the exclusive volition and control of the injured party. Said Harris, J.: 'If a guardian or next friend has the power insisted upon, we desire to learn whence it is derived. It certainly is not given by express provision of law, nor can it legitimately be deduced from the personal custody of the ward,

which imposes certain duties on the guardian which he must perform. * * * Whether after gross and repeated infidelities (by the husband), the wife will continue to regard him as her husband, and live with him as his wife, is for her decision only. Death only can dissolve the marriage relation without her consent, and no divorce can or ought to be had in this or any other case but ·through the agency and will of the injured wife.' There does not appear to be any way of resisting the force of this reasoning at all events, if the object of the suit is to obtain the dissolution of a marriage for a cause which occurred subsequently to the nuptials, and the insane person knew of the cause before the insanity came on, yet did not choose to proceed by reason of it, one cannot well see how this committee can choose to abrogate a status of marriage which the ward, in his sound mind chose to let remain, for divorce is one of those rights which the party can exercise or forbear to exercise at his pleasure. If the breach occurred or was first known after the insanity came on, guardian might, with more reason, presume that the ward would desire the legal consequence to follow, yet as the mere will of a' guardian cannot marry a ward, how can it divorce him?"

2 Kent's·Commentaries (12th Ed.) § 118, p. 100, states the rule as follows:

"Though the fact of adultery be made out, it does not follow, as a matter of course, that a divorce is to be awarded, for the remedy by divorce is purely a civil and private prosecution, under the control and volition of the party aggrieved, and he may bar himself of the remedy in several ways by his own act."

To the same effect, see Kimball v. Kimball, 44 N. H. 122, 82 Am. Dec. 194; Thomas v. Thomas, 145 Ga. 111, 88 S. E. 584. In the Birdzell Case, supra, the defendant in error, in an application for rehearing, alleged that Birdzell . had abandoned his wife without providing any support; that she was insane and destitute, and that he should be compelled to make some provisions out of the money that came to him through her for her maintenance and support, and that a court of equity, independent of any statute, should grant some relief in the case. There, as in the instant case, the petition was in the form of an ordinary action for divorce and alimony under the statute. The court denied the motion, saying that it had not been decided that the unquestioned duty of the husband to support his wife may not be enforced by a court of equity upon proper proceedings commenced therefor, and further, "If the petition heretofore filed be amended so as to show that Birdzell has abandoned his wife, and separated himself from her without providing any sufficient support, and other facts are set forth showing that the wife has no adequate or sufficient remedy under the statute, then a case will be presented as to the jurisdiction of the district court, as a court of equity, to grant salutary relief independent of the statute relating to divorce and alimony. When such a case is

before us, it will be time enough for us to decide whether there is any remedy for such wrongs by way of an allowance for suitable maintenance and support out of the estate of the husband." 35 Kan. 638, 11 P. 907.

The petition in the instant case does not allege that the defendant is wasting the community property, or fraudulently attempting to deprive Mrs. Dillion of her interest therein, nor is it shown that his conduct is such as to jeopardize her life or seriously effect her physical health. On the contrary, it appears from the record that, since the institution of the suit, he has been appointed guardian of her person and estate. The legality and propriety of that proceeding is not before us for review. Taking the petition as a whole, nothing is alleged which calls for the exercise of any extraordinary action by a court of equity. Our conclusion upon this branch of the case is in accordance with the uniform holding in other jurisdictions—that the plaintiff cannot maintain an action for divorce, either in her own name or by next friend.

[2] Since the suit for divorce cannot be maintained either by the insane plaintiff or by Giles, as next friend, the next inquiry is, did the court err in dismissing the action after sustaining the plea in abatement, when the plaintiff, in addition to a suit for divorce, sought to recover exactly $500 borrowed money, and interest for ten years, and for partition of the community estate? The district court has no jurisdiction where the matter in controversy is of the exact value of $500, exclusive of interest. Carroll v. Silk, 70 Tex. 23, 11 S. W. 116; Garrison v. Pac. Exp. Co., 69 Tex. 345, 6 S. W. 842, Const. art. 5, §§ 8 and 16.

[3] It follows that unless the plaintiff had the right to maintain her action by next friend, and to have a partition of the community property where a divorce could not be granted, the court did not err in dismissing the action.

The petition alleges that the property of the value of $100,000, which plaintiff is seeking to partition, is all community property. It is not alleged that the defendant wasted it or threatened to do so, and no fraud in relation to his actions concerning it are set out. Under the general rule, he has the right to the possession and control of the community property, and before plaintiff can appeal to the courts with reference to it, she must, by her petition, bring her case within an exception to that rule. Coss v. Coss (Tex. Civ. App.) 207 S. W. 127, and the cases there cited, upon which the appellant relies, do not support the proposition asserting that she could maintain the suit.

The prayer of the petition is for alimony and for an allowance as attorney's fees, but it does not appear that these matters were considered or adjudicated by the trial court, nor is there any contention here by assignment and proposition with reference to them. The affirmance, therefore, is made without prejudice to the right, if any, to recover reasonable attorney's fees in a separate action instituted for that purpose. Our decision is without reference to either the matter of alimony or attorney's fees.

No reversible error appears in the record, and the judgment is affirmed.