ARTURO CABÁN, ETC., Plaintiff and Appellant, *v.*
GREGORIA FERRER, Defendant and Appellee.

No. 6831. Argued March 18, 1936.—Decided March 31, 1936.

*A. R. Barceló, Jr.,* for appellant. Appellee did not appear in this court.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Arturo Cabán was married in 1925. In October 1931 he was adjudged insane and a tutor was appointed. In October 1933 this tutor resigned and another was appointed. In March 1934 Arturo Cabán, represented by his tutor, Leopoldo Cabán, brought an action for divorce on the ground of abandonment. The date of abandonment was about a week after the marriage. The district court after a trial on the merits held that an action for divorce could not be brought by a tutor in the name of his insane ward.

Appellant quotes from 2 Schouler "Marriage, Divorce, Separation and Domestic Relations," 1757, section 1515, as follows:

"An insane spouse may, by guardian or committee bring a divorce suit for cause against the guilty partner, with the same rights as though such complainant were in his or her right mind."

Appellant also quotes 9 R.C.L. 406, section 204, to the effect that:

"There is authority, especially in England, for the position that a suit for a divorce may be brought or continued by the guardian or committee of an insane spouse on his or her behalf."

We do not have access to Schouler.

In *Dillion* v. *Dillion*, 274 S.W. 217, a Texas Court of Appeals takes from 2 Bishop on Marriage and Divorce, section 306 (*a*), the following extract:

"We have seen that according to the late English dicta an insane person cannot maintain a suit to dissolve his marriage. This proposition is sustained by reasons which do not apply to the case of an insane defendant. It is a familiar doctrine that, though the law favors marriage, no one is compelled into matrimony by the law. The marital status can be assumed only of free choice, so that, however much a marriage may be for the advantage of an insane person, he is not capable of entering into it by himself, by guardian or by next friend. Much more as the law looks on divorce with disfavor, will it refuse a dissolution of the marriage to a party who does not consent to it. Consequently, the Georgia court held that an action for a divorce *a vinculo* cannot be maintained by *prochein ami* in the name of a lunatic wife. The right to bring the suit is strictly personal and under the exclusive volition and control of the injured party. Said Harris, J.: 'If a guardian or next friend has the power insisted upon, we desire to learn whence it is derived. It certainly is not given by express provision of law, nor can it legitimately be deduced from the personal custody of the ward, which imposes certain duties on the guardian which he must perform. . . . Whether, after gross and repeated infidelities (by the husband), the wife will continue to regard him as her husband,

and live with him as his wife, is for her decision only. Death only can dissolve the marriage relation without her consent, and no divorce can or ought to be had in this or any other case but through the agency and will of the injured wife.' There does not appear to be any way of resisting the force of this reasoning at all events, if the object of the suit is to obtain the dissolution of a marriage for a cause which occurred subsequently to the nuptials, and the insane person knew of the cause before the insanity came on, yet did not choose to proceed by reason of it, one cannot well see how this committee can choose to abrogate a status of marriage which the ward, in his sound mind chose to let remain, for divorce is one of those rights which the party can exercise or forbear to exercise at his pleasure. If the breach occurred or was first known after the insanity came on, the guardian might, with more reason, presume that the ward would desire the legal consequence to follow, yet as the mere will of a guardian cannot marry a ward, how can it divorce him?''

Ruling Case Law in the same section quoted by appellant goes on to say that:

"According to the prevailing view in this country a suit for divorce is regarded as so strictly personal and volitional that it cannot be maintained at the pleasure of a guardian or committee of an insane spouse, even though the result is to render the marriage indissoluble by or on behalf of the insane party."

See also the note to *Mohler* v. *Shank,* 34 L.R.A. 161, subhead VI, ''Actions on behalf of insane persons'' 166, and the note to *Fourth National Bank* v. *Diver,* 70 A.L.R. 950, 964.

Appellant also relies on section 212 of the Civil Code (1930 ed.), which reads in part as follows:

"The tutor shall require the authorization of the proper district court:

" *             *             *             *             *             *             *

"13. To bring suit in the name of those under tutorship and maintain all lawful appeals when they lie from judgment rendered against them.

"Complaints and remedies in verbal hearings are excepted."

This section should be construed, as it was construed by the district court, in connection with section 167 which says that:

"The object of tutorship is the custody of the person and property, or of only the property, of such persons who, not subject to *patria potestas,* are incapable of governing themselves."

So construed, section 212 does not confer upon tutors the power to bring an action for divorce in the name of an insane plaintiff. If the prevailing American doctrine is to be followed in this jurisdiction in the absence of express statutory provision to the contrary, something more specific should be required as evidence of a legislative intent to establish a different rule as to suit for divorce. In any event, if section 212 should be construed as authorizing district courts to permit a tutor to commence such a suit, the court would not exhaust its discretion in granting leave to file a complaint but might reconsider its action in so doing after deciding, as the district court did decide in the instant case, that in accordance with the American doctrine a tutor should not be allowed to prosecute such an action in the name of his insane ward. It may be that there is much to be said in favor of the English doctrine which seems to have been followed in Massachusetts and in a few other states. While we have no desire to close the door to further discussion of the question in future cases, we are not prepared to say that the district court erred in the conclusion it reached in the instant case.

The judgment appealed from must be affirmed.

Mr. Justice Córdova Dávila concurs in the judgment and in the opinion on which it is based, with the exception of the reservation made at the end thereof.

Mr. Justice Travieso took no part in the decision of this case.