HARDY *v.* HARDY.

1. Appeal and Error—Questions Reviewable—Divorce—Estoppel
   —Laches.

   Whether or not court lacked jurisdiction over person of defendant in divorce action and whether or not such court could entertain a suit for divorce brought by an insane person are not determined in suit to set aside decree therein, brought nearly 20 years after decree had been entered, nearly 19 years after wife had been declared sane and 17½ years after defendant therein became aware of existence of the decree and less than a month after the death of the wife, since plaintiff herein is barred by estoppel and laches, in the absence of any explanation of such gross procrastination.

2. Divorce—Jurisdiction—Substituted Service—Proceeding In
   Rem as to Property.

   Where 4 different process servers each deposed that they were unable to locate defendant husband in suit for divorce after diligent search and statutory substituted service was resorted to, the court in entering an order *pro confesso* granting the divorce for desertion, cruelty and nonsupport, operated *in rem* as to the home which the parties had owned as tenants by the entireties and household furnishings in awarding them to

---

References for Points in Headnotes

[1,4] 17 Am Jur, Divorce and Separation, §§ 433, 455, 459, 460.
[2] 17 Am Jur, Divorce and Separation, §§ 445, 448, 521, 522.
[2] Jurisdiction on constructive or substituted service, in suit for divorce or alimony, to reach property within State.  29 ALR 1381; 64 ALR 1392; 108 ALR 1302.
[3] 19 Am Jur, Equity, § 492.

plaintiff wife in lieu of all claims for dower and permanent alimony (CL 1948, § 613.46).

3. EQUITY—GROSS NEGLECT.
    . Public peace and good order are concerned in withholding the assistance of equity from those who grossly neglect to take care of their own rights.

4. DIVORCE—LAPSE OF TIME—DEATH.
    The public order and welfare require that reliance may properly be placed on a decree of divorce which has remained unassailed for a long period of years after the complaining party knew about it, and when death has overtaken one of the parties, the proceedings will not be set aside for other than exceptionally cogent reasons.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted October 7, 1949. (Docket No. 54, Calendar No. 44,462.) Decided December 8, 1949.

Bill by William Hardy against John Hardy and others to set aside decree of divorce and for declaration that plaintiff is owner of certain property. Decree for defendants. Plaintiff appeals. Affirmed.

*Charles A. Lorenzo,* for plaintiff.

*Fitzgerald, Walker, Conley & Hopping, Peter L. LaDuke,* and *Louis Andrzejewski,* for defendants.

BUTZEL, J. Plaintiff William Hardy appeals from an order granting defendant's motion to dismiss his bill of complaint on the ground of laches. He brought this suit against his 5 children individually, against one of them in her capacity as special administratrix of the estate of her deceased mother, and also against his 2 daughters-in-law. He asked that the divorce obtained from him by Amanda Hardy, now deceased, in 1928 be set aside and held for naught for lack of jurisdiction, and that the home originally held by the entireties but awarded

to Amanda in the divorce proceedings be decreed to be his sole and exclusive property by right of survivorship.

Plaintiff and Amanda were married in 1904. They had 5 children. She was adjudicated insane by the probate court for the county of Wayne in 1914 on plaintiff's petition. He was appointed guardian and remained so until he resigned on June 28, 1927, after a petition for his removal on the grounds of dissipation of her estate had been filed. Arnold Jacquemain was appointed as his successor. In November, 1925, plaintiff left his wife and family and took up his residence at 6022 Cadillac avenue, Detroit, at which address his pleadings in the instant case state that he has since remained.

A bill of divorce entitled, Amanda Hardy, by Arnold Jacquemain, guardian, *v.* William Hardy, was filed in the circuit court for the county of Wayne on August 15, 1927. Plaintiff had expressly made the entire file of the divorce case a part of the record before both the lower court and this Court. The bill of complaint in the divorce suit was signed by Amanda Hardy. She charged desertion, cruelty and nonsupport. Personal service could not be obtained despite the timely issuance of 2 alias summons and a pluries. The 4 different process servers all deposed that they were unable to locate William Hardy after diligent search. Statutory substituted service* was resorted to, no appearance or answer was filed, and an order *pro confesso* was entered. At the hearing the testimony of Amanda, whom the court apparently believed sufficiently competent as it was cognizant of her adjudication, and also that of Joseph Hardy, adult son of the parties, clearly established the charges. The prosecuting attorney's report in the divorce file shows that the juvenile court record re-

---

* See CL 1948, § 613.48 (Stat Ann § 27.776).—REPORTER.

garding the father's neglect of the 4 younger children began in 1920 and was very extensive, that they were taken from the custody of the parents much of the time, that the 2 younger girls were committed to St. Vincent de Paul Society and were public charges at the time the divorce suit was begun. The decree rendered on November 28, 1928, awarded to Amanda sole and exclusive ownership of the home at 3791 Maxwell avenue, Detroit, previously owned by the parties as tenants by the entireties, and also the household furnishings, in lieu of all claims for dower and permanent alimony.

Amanda was adjudicated sane by the probate court on April 6, 1929, and lived in her homestead as an unmarried woman until her death on February 23, 1948.

Plaintiff claims that he first learned of the decree and its provisions in 1930, about 1½ years after it was granted, when he obtained a copy. He commenced this suit on March 18, 1948, after 2 of his sons filed separate petitions for the probate of their mother's estate. He contends that the divorce proceedings were null and void for lack of jurisdiction over his person and for want of jurisdiction in the court to entertain a divorce suit brought by an insane person by her guardian.

We need not decide these questions. Even if plaintiff's contentions are correct, he has delayed too long before asserting his claim. Though a divorce be invalid for lack of jurisdiction over the person, the party seeking to have it set aside is prevented by estoppel or laches under the facts in this case. *Livingston* v. *Livingston,* 276 Mich 399, and the authorities cited therein; *Zoellner* v. *Zoellner,* 46 Mich 511. Plaintiff's pleadings are devoid of any explanation of his gross procrastination. They contain nothing which would appeal to the equity and good conscience of the Court. This suit was commenced

more than 19 years after the divorce was granted, although it is admitted that plaintiff has known of the decree and its provisions regarding the property in question for 17½ years prior to the filing of the bill. He has refrained from attacking the proceedings until the finality of death has made it impossible for any court to restore the conjugal status, with its duties and obligations. Earlier filing of a bill to set the divorce aside would have given Amanda notice of the invalidity asserted and of the claim against the property which the court, acting *in rem*, had awarded solely and exclusively to her. Were the prior proceedings declared null and void, she could have instituted a new divorce suit, had she so wished, or enforced the obligation of support. Plaintiff has remained dormant until this possibility lapsed.

*Carlisle* v. *Carlisle*, 96 Mich 128, contains an excerpt from *Zoellner* v. *Zoellner, supra,* which is equally applicable to the case at bar:

" 'Nothing is now involved except property. The sole motive of the petitioner in assailing the judicial proceeding which purported to sever her connection with the deceased complainant is to get, through a kind of *post mortem* adjudication, a share of the property he left. * * * The defects in the proceedings which are now set up were open to detection by the least attention to facts which must have been obvious to her, and the notice from her husband, and the surrounding circumstances with which she was intimate, were urgent calls upon her to look into the proceedings. In short, if her present explanations are correct, the facts of which she had full knowledge implied conclusively that the decree was a fraud, and there is no reason to suppose that she was not then as eligibly situated to take action as she is now. * * * The proceeding is consequently subject to the proposition that the public peace and good order are concerned in withholding the assistance of equity from

those who grossly neglect to take care of their own rights.' "

The public order and welfare require that reliance may properly be placed on a decree of divorce which has remained unassailed for a long period of years after the complaining party knew about it. When death has overtaken one of the parties, the proceedings will not be set aside for other than exceptionally cogent reasons.

The order of the court below is affirmed, with costs to the defendants.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and CARR, JJ., concurred.